UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LUIS GIL,

                                        Plaintiff,

                                                              **REPORT AND**
              -against-                                       **RECOMMENDATION**
                                                              17-CV-1520-ARR-SJB

NIKI FRANTZIS,
95-05 41ST AVENUE LLC,

                                        Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

On March 17, 2017, Plaintiff Luis Gil ("Gil") brought this wage and hour action

against Defendants Niki Frantzis ("Frantzis") and 95-05 41st Avenue LLC ("41st

Avenue") (collectively "Defendants").  On February 2, 2018, Gil moved for a default

judgment against Frantzis and 41st Avenue.  On February 6, 2018, the Honorable Allyne

R. Ross referred the motion for a report and recommendation.  For the reasons stated

below, it is respectfully recommended that Gil's motion be granted and a default

judgment be entered.

<u>Factual Background and Procedural History</u>

41st Avenue is a 16-unit residential building in Elmhurst, NY.  (Compl. ¶¶ 1, 8).

Gil has been employed as the superintendent of 41st Avenue since 1996.  (*Id.* ¶ 8).

Frantzis is the owner of 41st Avenue and is involved in managing the day-to-day

operations of the building.  (Affidavit of Luis Gil in Support of Plaintiff's Motion for

Default Judgment dated December 7, 2017, Dkt. No. 16 ("Gil Aff.") ¶¶ 4-5; Compl. ¶ 6).

From 1996 to 2007, Frantzis's husband, Stratis Frantzis, owned and managed 41st

Avenue.  (Gil Aff. ¶ 4).  Since 2008, Frantzis has owned and managed the day-to-day

operations. (*Id.* ¶ 4-5). Frantzis and 41st Avenue "have performed related activities through unified operations or common control since at least 1996, with the common purpose of operating and maintaining the [building]." (Compl. ¶ 10).

As the superintendent, Gil's job duties include cleaning the exterior areas surrounding the building, cleaning the interior common area, collecting and removing recycling, and preparing garbage for pick up, removing snow and correcting code violations. (Gil Aff. ¶ 8; Compl. ¶¶ 12, 16). In addition, Gil is responsible for responding to tenant complaints and requests, performing plumbing repairs, repairing radiators and performing other general maintenance for apartments. (Gil Aff. ¶¶ 8-9; Compl. ¶ 16).

Gil alleges that throughout his employment, he regularly worked approximately 25 hours per week, seven days per week. (Gil Aff. ¶ 8; *see also* Compl. ¶ 16 (alleging that Gil worked between 20 and 30 hours each week)). Gil lives in an apartment in the building and is on call 24 hours a day, 7 days per week to respond to tenant complaints. (Gil Aff. ¶¶ 3, 8-9). Tenants both call and visit Gil's apartment with complaints and requests, and Gil is expected to answer the requests whenever they arise. (*Id.* ¶ 9).

Gil alleges that Defendants failed to pay him any wages for any of the hours he worked at 41st Avenue and at Frantzis's personal home during four periods: (*Id.* ¶ 13; Compl. ¶¶ 9, 15):

1.      From July 16, 2012 to July 19, 2012, Frantzis employed Gil to perform landscaping and yard work from 8 a.m. to 4 p.m. at her home in Whitestone, New York. (Gil Aff. ¶ 10; Compl. ¶ 23). Gil continued to perform his regular duties for 41st Avenue while he worked at Frantzis's home, (Compl. ¶ 27), and worked a total of 57 hours that week. (Gil Aff. ¶ 10).

2.      For one week in June 2013, Frantzis employed Gil to paint her home from 8 a.m. to 4 p.m.  (Gil Aff. ¶ 11; Compl. ¶¶ 24).  Gil continued to perform his regular duties for 41st Avenue while he worked at Frantzis's home, (*id.* ¶ 27), and worked a total of 65 hours that week.  (Gil Aff. ¶ 11).

3.      During the summer of 2014, Gil worked approximately two hours at Frantzis's home removing and cleaning shattered safety glass from a sliding door.  (Gil Aff. ¶ 12; Compl. ¶ 25).  Gil continued to perform his regular duties for 41st Avenue while he worked at Frantzis's home, (*id.* ¶ 27), and worked a total of 27 hours that week. (Gil Aff. ¶ 12).

4.      Gil also alleges that at no time from the beginning of his employment in 1996 to the present was he ever paid for the 25 hours per week he worked at 41st Avenue.  (*Id.* ¶ 13; Compl. ¶ 9).[1]

Gil further alleges that in order to perform his job duties and make necessary repairs required by Defendants, he was required to purchase tools and materials including: a drill, plaster spatulas, screws, nails, tape, hammers, gloves, screwdrivers, an electric saw, extension cables, lightbulbs, a ladder, a snow shovel, a plumbing snake, a

---

[1] Gil seeks damages under NYLL from March 17, 2011, the earliest date permitted under the NYLL statute of limitations, to March 20, 2014.  He then seeks damages under FLSA from March 20, 2014 to December 7, 2017, the date of his affidavit.

Although Gil seeks damages then for the period from March 2017 to December 2017, which post-dates the filing of the Complaint, courts may award current employees damages for such ongoing or continuing violations of FLSA or NYLL in a default judgment, *see, e.g.*, *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012) (although complaint was filed on October 29, 2010, plaintiff Maldonado sought and damages recommended through December 8, 2010), *report and recommendation adopted*, No. 10-CV-8195, Dkt. No. 20 (Aug. 9, 2012), so long as the complaint provided adequate notice that the defendants may be liable.  *See generally Shop Ironworkers Local 790 Pension Tr. v. ABS Mfrs., Inc.*, No. 13-2275, 2014 WL 692865, at *2 (N.D. Cal. Feb. 21, 2014).  The Complaint here alleges ongoing violations.  (Compl. ¶ 1).

welding torch, welding supplies, protective masks, work clothing and shoes, paint, paint brushes, paint rollers, brooms, mops, rags, scissors, sandpaper plaster, faucet parts, a tile cutter, and a snow blower.  (Gil Aff. ¶ 14; Compl. ¶ 19).  Gil spent a total of $1,980 on tools and materials.  (Gil Aff. ¶ 14; Compl. ¶ 19).  Gil was never reimbursed for these expenses.  (*Id.* ¶ 41).  Separately, Gil was required to pay three fines incurred by the building, totaling about $525.  (Gil Aff. ¶ 14; Compl. ¶ 20).

In September 2014, Gil filed a complaint for unpaid wages with the New York State Department of Labor ("NYSDOL") against Defendants.  (Gil Aff. ¶ 15; Compl. ¶ 21).  NYSDOL investigated Gil's claims that arose earlier than 2011 until September 2014, and found that Defendants owed Gil wages.  (Gil Aff. ¶ 15; Compl. ¶ 21).  On August 4, 2015, the NYSDOL issued an order to comply against Defendants.  (Supplemental Memorandum of Law in Support of Plaintiff's Motion for Entry of Default Judgment, Dkt. No. 19 ("Pl.'s Supp. Br.") at 1-2).  Frantzis filed a petition for review, and a hearing before the Industrial Board of Appeals was scheduled.  (*Id.*).  The hearing was never held; Frantzis settled the claims in August 2016 and was ordered to make twenty-four payments.  (Gil Aff. ¶ 15; Compl. ¶ 21).  Gil received only three payments totaling $2,885 before Frantzis stopped making payment in October 2016.  (Gil Aff. ¶ 15; Compl. ¶ 21).  On July 21, 2018, Gil received another check for $20,133.58, which the NYSDOL confirmed represented the balance due to Gil under the settlement after fines and penalties.  (Letter regarding Default Judgment and Additional Monies Received by Plaintiff from NYSDOL dated July 24, 2018, Dkt. No. 22 ("Pl.'s Letter") at 1).

Gil alleges seven causes of action against both Defendants based on the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and N.Y. Labor Law ("NYLL"): violation of 1) the minimum wage provisions of FLSA (29 U.S.C. § 206(a)) (Compl. ¶¶

28-30); 2) the New York Minimum Wage law (NYLL § 652) (*id.* ¶¶ 31-33); 3) the overtime provisions of NYLL (NYLL § 199) (*id.* ¶¶ 34-36); 4) the per-unit wage provisions under 12 NYCRR § 141 (*id.* ¶¶ 37-39); 5) prohibited wage deductions under 12 NYCRR §§ 195-2, 195-4 (*id.* ¶¶ 40-42); 6) the wage statement provisions of NYLL (NYLL § 195(3)) (*id.* ¶¶ 43-45); and 7) the notice and recordkeeping requirements of NYLL (NYLL § 195(1)) (*id.* ¶¶ 46-48).

Gil seeks recovery of $110,432.74, comprised of: $48,055.75 in minimum wages, $304.50 in overtime wages, $12,767.70 in NYLL liquidated damages, $35,359.75 in FLSA liquidated damages, $5,000 in wage statement penalties, $5,010 for deductions and attendant liquidated damages, $6,265.12 in pre-judgment interest on NYLL wages, $738.50 in costs, and $19,950 in attorneys' fees, less the $23,018.58 in payments Gil received from Defendants pursuant to their agreement with the NYSDOL. (Memorandum of Law in Support of Plaintiff's Motion for Entry of Default Judgment dated February 2, 2018, Dkt. No. 16 ("Pl.'s Br.") at 21; Pl.'s Letter at 1-2).

On August 11, 2017, the Clerk of Court issued certificates of default against Frantzis and 41st Avenue.  (Dkt. No. 15).

Discussion

I.    <u>Entry of Default</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after

default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).

The Clerk of Court entered a default against both Frantzis and 41st Avenue on August 11, 2017.  (Dkt. No. 15).

A threshold question before reaching liability or damages is whether Frantzis and 41st Avenue's conduct is sufficient to warrant default judgment being entered.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted).

As to the first factor, the failure by Frantzis and 41st Avenue to respond to the Complaint demonstrates their default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at * 1 (S.D.N.Y. Dec. 20, 2007).  They had sufficient notice of the present litigation.  Both were properly served with a summons and the Complaint.  A copy of a summons and the Complaint was left with an authorized agent in the Office of the Secretary of State of the State of New York for 41st Avenue on March 21, 2017.  (Aff. of Service dated March 21, 2017, Dkt. No. 5).  A copy of a summons and the Complaint was affixed to Frantzis's dwelling house/usual place of abode on May 22, 2017.  (Aff. of Service dated May 24, 2017, Dkt. No. 9).  A

copy of a summons and the Complaint was also mailed to Frantzis on May 30, 2017. (Aff. of Service dated May 30, 2017, Dkt. No. 10).  The motion for default judgment and certificates of default were served upon them via mail.  (Affirmation of Service dated February 12, 2018, Dkt. No. 17).  Notwithstanding this notice and service, Frantzis and 41st Avenue did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves.

As to the second factor, the Court cannot conclude there is any meritorious defense to Gil's allegations because neither Frantzis nor 41st Avenue appeared and no defense has been presented to the Court.  *See, e.g.*, *IndyMac Bank*, 2007 WL 4468652, at *1; *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012).  As to the third factor, the non-defaulting party, Gil, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, No. 06-CV-14226, Dkt. No. 18 (S.D.N.Y. Jan. 26, 2009).

As a result, all three factors permit entry of a default judgment.  The Court now turns to the liability imposed and damages to be awarded in such a judgment.

II.     Liability

When a defendant defaults, a court, on consideration of a plaintiff's default judgment motion, "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor."  *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009).  In addition, a party's default is deemed as an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-

CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotation marks omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").

A.      Minimum Wage, Overtime, and Per Unit Claims

Gil has alleged claims for violations of FLSA's minimum wage requirement and NYLL's minimum wage, overtime, and per-unit wage provisions.

1.      FLSA

a.      Statute of Limitations

Under FLSA, a plaintiff may file a claim two years after the cause of action accrues or three years if the violation is willful.  29 U.S.C. § 255(a).  A violation is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]"  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  The Complaint alleges that Defendants' violations of FLSA were willful. (Compl. ¶ 29).  The Court accepts this as true on default, and the Court concludes that a three-year statute of limitations applies to Gil's FLSA claims.  *See, e.g.*, *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) ("[Defendant] has therefore

forfeited, by virtue of its default, any argument that [the plaintiff] has failed to establish its willfulness for purposes of the limitations period[.]").

The Complaint was filed on March 17, 2017, and therefore any FLSA claim before March 17, 2014 is time barred.  In any event, Gil only seeks FLSA minimum wages for a period within the three years prior to the filing of the Complaint, namely March 20, 2014 to December 7, 2017.  (Pl.'s Br. at 13).

    b.  Employment at 41st Avenue

With respect to the work that Gil did for 41st Avenue, the following liability analysis applies:

    1)    Threshold Requirements

To establish a claim under FLSA, "plaintiff must prove the following: (1) the defendant is an employer subject to . . . FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . FLSA; and (3) the employment relationship is not exempted from . . . FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016) (citations omitted), *report and recommendation adopted*, 2017 WL 780799 (Feb. 28, 2017).

    a)    Employers Subject to FLSA

Employers who have employees "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage") are subject to FLSA's minimum wage and overtime requirements.  29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009).

Gil has alleged he was personally "performing work involving or related to the movement of persons or things . . . between states." *Shim*, 2009 WL 211367, at *2 (quotations omitted); *see generally Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985). Gil regularly, once or twice a month, handled tenants' parcels and packages and about three or four times a year signed for a parcel or package on behalf of a tenant. (Compl. ¶ 11). Gil also alleges that throughout his employment he has regularly handled and worked on items that traveled between New York and other states. (Compl. ¶ 11). Twice a week, he sorted, screened, packed and handled garbage and recycling that was then shipped outside New York. (*Id.*). Gil also alleges that he used various tools and supplies for such duties. (Gil Aff. ¶ 14; Compl. ¶ 19). These activities have a sufficient interstate nexus to trigger FLSA's protection; the Court concludes that FLSA's minimum wage provision applies to Frantzis and 41st Avenue. *See, e.g.*, *Quintero v. Anjudiromi Constr. Corp.*, No. 16-CV-8781, 2018 WL 1027716, at *3 (S.D.N.Y. Feb. 21, 2018) (finding the interstate commerce requirement met where plaintiff's duties included "sweep[ing], pick[ing] up the garbage, repair[ing] things in all the apartments[,]" "[p]laintiff used supplies and tools to carry out these duties, and that these tools more likely than not traveled within interstate commerce.").

Frantzis, although an individual, is liable under FLSA for any work performed by Gil at 41st Avenue. Under FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). "An individual may be liable as an employer under . . . FLSA so long as he exercises operational control over the employee in question. [I]ndividuals who are found to be employers under . . . FLSA may be held jointly and severally liable to the plaintiff." *Saucedo*, 2016 WL 8376837, at *5 (citations omitted). The Complaint alleges

and Gil avers that Frantzis is the owner and day-to-day manager of 41st Avenue.

(Compl. ¶¶ 6-8, 10-12; Gil Aff. ¶¶ 4-5).  These allegations, accepted as true on default,

are sufficient to subject Frantzis to FLSA liability as an employer for work done at 41st

Avenue.  *See, e.g.*, *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660,

at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL

1770555 (Apr. 12, 2018) ("The Complaint alleges that Phakamas is an owner, manager,

principal or agent of Royal Thai, and operates Royal Thai. . . .  This allegation is

sufficient to subject Phakamas to FLSA liability as an employer, along with Royal Thai.")

(citation omitted).

### b)    Employees Covered By FLSA

Any "individual employed by an employer" is protected under FLSA's minimum

and overtime provisions.  29 U.S.C. § 203(e)(1).  To determine whether an individual is

"employed," "the ultimate question is whether the putative employee is economically

dependent on the putative employer.  In other words, the court must determine

whether, as a matter of economic reality, the worker depends upon someone else's

business for the opportunity to render service or is in business for himself."  *Velu v.*

*Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quotations and

alterations omitted).  The Complaint alleges that Gil was employed by Frantzis and 41st

Avenue, and there is no basis from the Complaint to infer anything other than Gil was

working for a business owned and operated by someone else.  (Compl. ¶¶ 6, 8, 11, 12; Gil

Aff. ¶¶ 3-5, 7).

iii.    <u>Exempt Employment Relationship</u>

There is no basis from the Complaint to infer that the employment relationship between Gil and Frantzis and 41st Avenue is exempt from FLSA.  *See* 29 U.S.C. § 203 (FLSA "definitions" and exemptions).

2)    <u>FLSA Minimum Wage Claim</u>

Gil alleges a violation of FLSA's minimum-wage provision, which provides that "[e]very employer shall pay to each of his employees . . . not less than . . . [the federal minimum wage]."  29 U.S.C. § 206(a).  His FLSA minimum wage claim covers for his work at 41st Avenue spans the period from March 20, 2014 to December 7, 2017.  During that period the FLSA minimum wage, as determined by the Fair Minimum Wage Act, was $7.25 an hour.  29 U.S.C. § 206(a).

Gil alleges that from March 20, 2014 to December 7, 2017, he regularly worked 25 hours per week at 41st Avenue.  (Gil Aff. ¶ 8).  He alleges that Defendants failed to pay him any wages for those hours.  (*Id.* ¶ 13; Compl. ¶¶ 9, 15).  Thus, Defendants are liable under FLSA for minimum wage violations from March 20, 2014 to December 7, 2017 for Gil's work at 41st Avenue.

c.    <u>2014 Work at Frantzis's Home</u>

The two hours of work Gil did for Frantzis at her home in 2014—painting and gardening—is not covered by FLSA, because Gil has not alleged that such activity involved interstate commerce.  (The work he did at her home in 2012 and 2013 at her home is outside of FLSA's statute of limitations).  That is, painting and gardening is not "engag[ing] in commerce or in the production of goods for commerce" ("individual coverage") or being "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").  *Payamps v. M & M*

*Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (finding no FLSA liability, even on default, where complaint failed to allege any interstate nexus to work performed). As a result, he is not entitled to minimum wages for the 2 hours of work he did at her home in 2014.

   2. NYLL Claims

      a. Statute of Limitations

The statute of limitations under NYLL is six years. NYLL § 663(3). As a result, any of Gil's work prior to March 17, 2017 would be covered by NYLL. He is only seeking NYLL redress, however, for his work from March 17, 2011 to March 20, 2014 at 41st Avenue, and for the summers of 2012 and 2013 when he also did work at Frantzis's home.

      b. Threshold Requirements

A covered "employee" protected by NYLL is "any individual employed or permitted to work by an employer in any occupation." NYLL § 651(5); *see generally Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-06304, 2014 WL 1011070, at *9 (E.D.N.Y. Mar. 14, 2014). There are a number of exemptions to that definition, none of which are applicable in this case. *See* NYLL § 651(5). The Complaint alleges that Gil was an employee of 41st Avenue and Frantzis, which are alleged to be regulated employers under NYLL. (Compl. ¶¶ 5-7). The Court accepts these factual allegations as true, and concludes that NYLL protects Gil. *E.g.*, *Gonzales*, 2014 WL 1011070, at *9.

      b. Work for 41st Avenue (the "Per-Unit" Claim)

Gil's wages for his 41st Avenue work are governed by the NYSDOL Minimum Wage Order for the Building Service Industry ("the Building Wage Order"). 12 NYCRR § 141-3.1. The Building Wage Order applies to "any person . . . engaged in whole or in part

in . . . servicing, cleaning, maintaining, selling or managing buildings, . . . and all occupations, operations and services in connection therewith or incidental thereto." *Id.*

The Building Wage Order provides that a "janitor's" weekly wages are determined by the number of units in the building he services. The Building Wage Order defines a "janitor" expansively. 12 NYCRR § 141-3.4 (defining janitor as "a person employed to render any physical service in connection with the maintenance, care or operation of a residential building."). Building superintendents with job duties similar to Gil's are "janitors" covered by the Building Wage Order. *E.g.*, *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 400 (E.D.N.Y. 2014) (holding that residential superintendent covered by Building Wage Order); *Almonte v. 437 Morris Park, LLC*, No. 14-CV-5951, 2015 WL 7460019, at *4 (S.D.N.Y. Nov. 24, 2015) ("[T]he Building Service Order clearly applies to employees like Plaintiff, who maintain and repair multi-unit apartment buildings occupied by multiple families."). In addition, Gil concedes that he is subject to the Building Wage Order. (Compl. ¶ 17; Gil Aff. ¶¶ 8-9).

Wages for janitors under the Building Wage Order are determined by the number of apartments in a building, and calculated on a weekly basis. Because Gil alleges that Defendants failed to pay him such wages for the period March 17, 2011 to March 20, 2014, Defendants are liable under NYLL for per-unit payment violations for Gil's work at 41st Avenue. (Gil Aff. ¶ 13; Compl. ¶¶ 9, 15); *see, e.g.*, *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356, 2014 WL 1310311, at *10 (E.D.N.Y. Mar. 10, 2014),

*report and recommendation adopted as modified*, 2014 WL 1311773 (Mar. 28, 2014)

(awarding damages for unpaid wages based on per-unit calculation).[2]

> c.  <u>Work at Frantzis's Home</u>

Because NYLL does not have an interstate commerce requirement, Defendants

could be liable under NYLL without being liable under FLSA for work done at Frantzis's

home.  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) ("While a

genuine issue of material fact regarding Choice's engagement in interstate commerce

precluded a determination on Choice's coverage under the FLSA, interstate commerce is

not relevant to an employer's liability under the NYLL provisions at issue here."); *Chun*

*Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008)

("Unlike the FLSA, however, the [NYLL] does not require a plaintiff to show either a

nexus with interstate commerce or that the employer has any minimum amount of

annual sales.").

However, only Frantzis is liable for the work performed at her home.  NYLL

permits liability to be imposed on two parties as a joint employer.  To establish that two

parties are a single joint employer, the test under NYLL is the same as under FLSA: "an

economic reality" test, that looks at a non-exclusive list of factors.  *Teri v. Spinelli*, 980

F. Supp. 2d 366, 375 (E.D.N.Y. 2013) ("District courts in this Circuit have regularly

applied the same factors and tests to determine whether entities are joint employers

under the NYLL.").  Those factors, elucidated by the Second Circuit are "(1) whether [the

---

[2] As with FLSA, Frantzis is liable along with 41st Avenue under NYLL for work done by Gil at 41st Avenue.  *Andrade v. 168 First Ave Rest. Ltd.*, No. 14-CV-8268, 2016 WL 3141567, at *12 (S.D.N.Y. June 3, 2016) (finding individual defendants liable along with corporation for NYLL claims), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).

alleged joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [original employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer]." *Id.* at 374 n.13 (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003)).  The Complaint does not contain allegations that address any of these factors, and the Court therefore has no basis to impose liability under NYLL on 41st Avenue for work conducted at Frantzis's home.

Frantzis by virtue of her default is liable for minimum and overtime wages owed to Gil for his work at her home in the summers of 2012 and 2013.

The Court does not impose liability for work performed in the summer of 2014. Gil's damages spreadsheet calculates damages for work performed in 2014 at Frantzis's home under FLSA and the NYLL.  Although Gil's brief suggests he is making a NYLL claim for 2014 (Pl.'s Br. at 9), his damages spreadsheet does the opposite, and elects FLSA damages on the assumption that FLSA recovery is higher in this period.  (*See* Damages Spreadsheet, attached to Pl.'s Br., Ex. 7 ("Damages Spreadsheet) at 4). However, as discussed *supra* at 12-13, FLSA liability does not exist for work at Frantzis's home.  The Court interprets this damages calculation as an election to proceed under FLSA, and therefore declines to impose liability or damages under NYLL for work done at Frantzis's home in the summer of 2014.

B. <u>Wage Theft Protection Act Claims</u>

New York's Wage Theft Protection Act ("WTPA") requires employers to provide written wage notice "within 10 business days of his first day of employment[.]" *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016). "'[E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.'" *Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015) (citing N.Y. Lab. Law § 195(1)(a))). The penalty for failing to provide that notice is $50 per workweek for any violation occurring before February 26, 2015, and $50 per workday for any violation after February 27, 2015, up to $5,000. NYLL § 198(1-b).

The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid. NYLL § 195(3). The penalty for failing to provide those wage statements is $100 per day for each workday for any violation on or before February 26, 2015, and $250 per workday for any violation after February 27, 2015, up to $5,000. NYLL § 198(1-d)*; see also Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017).

Gil has alleged that Frantzis and 41st Avenue never provided him with a wage notice at the start of his employment, (Compl. ¶ 44), or a wage statement with each payment of wages as required.  (*Id.* ¶ 47; Gil Aff. ¶ 16 ("Throughout my employment with Defendants, I have never received any wage statement providing my rate of pay, basis of pay, and any allowances claimed.")).  He appears only to make these allegations—and only seeks damages for—the work he did at 41st Avenue.  The failure of 41st Avenue and Frantzis to give Gil a wage notice and wage statements is sufficient to hold them liable under the WTPA.  *See, e.g.*, *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *13 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (Mar. 2, 2017).

C.    Wage Deductions

The Building Wage Order provides that the cost of tools and supplies necessary for building maintenance may not be deducted from an employee's wages.  12 NYCRR § 141-1.9.  It also provides that an employee's "wages shall not be reduced by expenses incurred by an employee in carrying out duties assigned by an employer."  12 NYCRR § 141-2.10(b).  *See, e.g.*, *Maldonado*, 2012 WL 1669341, at *8 (finding a violation of NYLL § 193 under general wage order which permits deductions for "tools of the trade" only if doing so does not reduce employee's wage below minimum wage).  Such violations can be the basis of a claim under 12 NYCRR § 195-2.

Gil alleges that he was forced to pay, without reimbursement, for a variety of tools (drill, plaster spatulas, screws, nails, tape, hammers, gloves, screwdrivers, an electric saw, extension cables, lightbulbs, a ladder, a snow shovel, a plumbing snake, a welding torch, welding supplies, protective masks, work clothing and shoes, paint, paint brushes, paint rollers, brooms, mops, rags, scissors, sandpaper plaster, faucet parts, a

tile cutter, and a snow blower); and to pay fines and penalties by the New York City Department of Buildings.  (Compl. ¶¶ 19-20, 41).

This is sufficient to state an improper wage deduction claim under 12 NYCRR § 195-2.

*        *        *

The Court determines that Gil has properly alleged, and by virtue of their default, Frantzis and 41st Avenue are liable for Gil's work at 41st Avenue for violations of:

1. FLSA's minimum wage provisions for the period of March 20, 2014 until December 7, 2017;

2. NYLL's per-unit provisions under the Building Wage Order for the period March 17, 2011 until March 20, 2014;

3. WTPA's wage notice and wage statement provisions; and

4. the Building Wage Order's prohibition on improper wage deductions.

Frantzis is separately liable for Gil's work at her home for violation of:

1.  NYLL minimum wage and overtime provisions for the work performed at her home in the summers of 2012 and 2013.

III.   Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158.  "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted). "The court must conduct an inquiry to ascertain the amount of damages with reasonable

certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x. 19, 20-21 (2d Cir. 2002). An employee may meet his burden of showing the amount and extent of his hours work through his own recollection. *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011). As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371 (Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers").[3]

---

[3] The spreadsheet submitted by Gil seeks $48,055.75 in wages. (Damages Spreadsheet at 1). The Court's calculations arrive at a different total and one that is differentiated between the separate liability for Frantzis and 41st Avenue.

A. Work at 41st Avenue

1. FLSA Wages Owed

From March 20, 2014 through December 7, 2017, Gil seeks minimum wages under FLSA.  Gil seeks $7.25 per hour, for 25 hours per week for each of the 194 weeks during this period.  This results in the following calculations:

| FLSA Minimum Wages | 3/20/14 to 12/7/17 |
|---|---|
| Total Hours Worked | 25 |
| Federal Minimum Wage | $7.25 |
| Weekly Minimum Wage Compensation (25 hours per week) | $181.25 |
| Number of Weeks | 194 |
| Total Minimum Wages Owed | **$35,162.50** |

Gil is owed a total of $35,162.50 under FLSA for the period from March 20, 2014 through December 7, 2017.

ii. NYLL Per-Unit Wages Owed

Gil seeks damages under the Building Wage Order for the period March 17, 2011 through March 20, 2014.  The per unit rate is $4.85 after July 24, 2009; $5.35 after December 31, 2013; and $5.85 after December 31, 2014.  12 NYCRR § 141-1.2; *Lee v. Kim*, No. 12-CV-316, 2013 WL 4522581, at *5 (E.D.N.Y. Aug. 27, 2013) (applying $4.85 rate).

This results in the following calculations:

| 41st Avenue (NYLL Wages) | **2011-2013** | **2014** |
|---|---|---|
| Per Unit Weekly Wage | $4.85 | $5.35 |
| Number of Units | 16 | 16 |
| Total Weekly Compensation | $77.60 | $85.60 |
| Number of Weeks | 145.86 | 11.29 |
| Amount Owed under NYLL Per-Unit Calculation | **$11,318.74** | **$966.42** |
| **Total Wages Unpaid** | **$12,285.16** | |

From 2011 to 2013, the weekly per-unit rate was $4.85, or $77.60 per week for a building with 16 units.  There were 145 weeks and 6 days from March 17, 2011 to

December 31, 2013.  The rate increased to $5.35 for 2014, or $85.60 per week for a building with 16 units.  12 NYCRR § 141-1.2.  There were 11 weeks and 2 days between January 1, 2014 to March 20, 2014.  This results in a total of $12,285.16 owed.

### iii.   WTPA Damages

Under the WTPA, a plaintiff is entitled to $50 per workweek before February 26, 2015, and $50 per workday after February 27, 2015, up to $5,000 for failure to provide a wage notice.  A plaintiff is further entitled to $100 per day for each workday before February 26, 2015, and $250 per workday for each workday after February 27, 2015, up to $5,000 for failure to provide a wage statement.  *Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666, 2017 WL 3701687, at *6 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (Aug. 25, 2017).

From March 17, 2011 to March 20, 2014, there were 157 weeks, and the wage notice violations of $50 per week reach the statutory maximum of $5,000.  Gil, however, does not seek, damages for wage notice violations.  (Pl.'s Br. at 16, 21).  For the wage statement claims, he does seek the statutory maximum of $5,000.  (*Id.*)  He is entitled to that amount because beginning on March 17, 2011 there were more than 50 workdays in which he failed to receive wage statements.

### iv.   Liquidated Damages

Gil seeks liquidated damages under both FLSA and NYLL.  Under FLSA, "[a]ny employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  "The Portal–to–Portal Act, 29 U.S.C. § 251 *et seq.,* which amended . . . FLSA, affords district courts discretion to deny liquidated

damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate . . . FLSA." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260).

NYLL also allows for liquidated damages. An employee can recover liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due (prior to this, liquidated damages were 25 percent). NYLL § 663(1).

In light of the default by Frantzis and 41st Avenue, there has been no showing that they acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception, the burden on the employer.") (quotations omitted); *Xochimitl*, 2016 WL 4704917, at *15 ("In situations where defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award.") (quotations omitted).

Where damages under both FLSA and NYLL have been awarded, courts award liquidated damages under FLSA for the period permitted under FLSA's statute of limitations, and liquidated damages under NYLL for NYLL claims. *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 47-48 (E.D.N.Y. 2015) ("I

23

accordingly will not include double liquidated damages in my calculations and related recommendations, although I will include NYLL liquidated damages for the period January 27, 2008 through January 26, 2011, and FLSA liquidated damages for the period January 27, 2011 through March 24, 2013.").

Gil should be awarded $35,162.50 in FLSA liquidated damages, an amount equal to the minimum wage damages owed under FLSA; and $12,093.93 in liquidated damages under NYLL, an amount equal to 100% of the per-unit wages owed under NYLL for the period April 9, 2011 to March 17, 2014, and 25% of the per-unit wages from March 17 to April 9, 2011.  The total liquidated damages, therefore, is $47,447.66 for his work at 41st Avenue.

v.   <u>Wage Deductions</u>

Gil also seeks reimbursement of $5,010 for unreimbursed tools and equipment and fines he paid on behalf of 41st Avenue.  Gil's affidavit lists in detail the equipment that he was required to purchase and the amount in fines paid.  (Gil Aff. ¶ 14).  Gil avers he spent a total of $1,980 in tools and materials, and paid $525 in total for three fines. (*Id.*)  Gil is entitled to damages for such expenses.  *See, e.g.*, *Maldonado*, 2012 WL 1669341, at *8 (awarding damages for bicycle expenses as a bicycle was a tool of the trade).  Courts may rely upon a plaintiff's declaration or affidavit as evidence of such damages for wage deductions.  *See, e.g.*, *id.*  The Court credits these statements and the accompanying amounts which appear to be reasonable approximations of the amounts purchased.  *See, e.g.*, *Hernandez*, 2016 WL 3248493, at *18 ("Although no documentary evidence was introduced, the Court credits plaintiffs' declarations regarding the expenses they incurred in the purchase and maintenance of their bicycles and related equipment.").

24

Liquidated damages are also available under NYLL for improper wage deductions. *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725, 2010 WL 4159391, at *6 (S.D.N.Y. Sept. 30, 2010).  It is therefore respectfully recommended that Gil be awarded an additional $2,505 in liquidated damages, for a total of $5,010.

 B.  Work at Frantzis's Home

The work performed at Frantzis's home was not "in connection with or incidental to" "renting, servicing, cleaning, maintaining, selling or managing buildings[.]"  12 NYCRR § 141-3.1.  As a result, the Building Wage Order per-unit metric for determining wages would not determine the damages for the work at her home.

Another provision of the Building Wage Order, however, does apply.  The Building Wage Order contains a provision for determining wages for non-building work done by an employee.  12 NYCRR § 141-2.11 provides that:

> An employee in the building service industry who works for the same employer at an occupation governed by another New York State minimum wage order:
>
> (a) for two hours or more during any one day; or
>
> (b) for 12 hours or more in any week;
>
> shall be paid for all hours of working time for that day or week in accordance with the minimum wage standards contained in the minimum wage order for such other industry, or for the building service industry, whichever is higher.

The provision entitles someone who works for the "same employer" in two jobs, each covered by a different wage standard, the benefit of the wage standard that results in higher wages. *Cf. Carrols Dev. Corp. v. Ross*, 447 N.Y.S.2d 563, 564 (App. Div. 4th Dep't 1982) (analyzing comparable provision and concluding "[t]he sole issue involves . . . employees of an employer in one industry governed by one minimum wage order who

25

perform tasks typically performed by employees in another industry governed by another minimum wage order.  In such cases, the employees are paid in accordance with the minimum wage order of their employer's industry or of the industry pertaining to their particular occupation, whichever is higher.").

In this case, Gil performed work at 41st Avenue as a superintendent, which is covered by the per-unit Building Wage Order, and also gardening and painting work, which is covered by the general New York Minimum Wage, 12 NYCRR 142-1.1 (the "Minimum Wage Order").  He did so for the "same employer;" Frantzis was the same employer of Gil at both locations.  And to the extent that he worked for her at her home for two or more hours in a day, or 12 or more hours in a week, he is entitled to greater of wages as between the Building Wage and Minimum Wage Order.  12 NYCRR § 141-2.11. The calculations below demonstrate:

|  |  | July 2012 | June 2013 |
|---|---|---|---|
| Minimum Wage Order | Total Hours Worked | 57 | 65 |
| | General Minimum Wage | $7.25 | $7.25 |
| | Overtime Wage Rate | $10.88 | $10.88 |
| | Basic Hours Worked | 40 | 40 |
| | Overtime Hours Worked | 17 | 25 |
| | Minimum Wages Unpaid | **$290.00** | **$290.00** |
| | Overtime Wages Unpaid | **$184.88** | **$271.88** |
| | **Minimum Wage Order Compensation** | **$474.88** | **$561.88** |
| Building Wage Order | Per Unit Weekly Wage | $4.85 | $4.85 |
| | Number of Units | 16 | 16 |
| | **Building Wage Order Compensation** | **$77.60** | **$77.60** |
| Award | **Entitlement under Section 141-2.11** | **$474.88** | **$561.88** |

For both July 2012 and June 2013, application of 12 NYCRR § 141-2.11 results in Gil receiving pay under the Minimum Wage Order because those amounts are greater than what he would receive under the Building Wage Order.  This totals $1,036.76.  As

the above chart reflects, Frantzis is being held responsible for 57 and 65 hours, totals that include the 25 hours per week Gil spent at 41st Avenue.  The 25 hours are included in these calculations because 12 NYCRR § 141-2.11 requires the person who is the "same employer" for the two jobs to pay the employee for "all hours of working time" at the greater wage rate.  Frantzis, who employed Gil at 41st Avenue and her home, was required to pay all his wages under the Minimum Wage Order.  By employing him to work on her house, she lost the benefit of the Building Wage Order's lower per-unit calculation.

Some adjustments are required, however.  As discussed earlier, *supra* at 10-11, Frantzis is already being held liable with 41st Avenue for Gil's unpaid work at the building, and that includes time in July 2012 and July 2013.  She cannot be made to pay twice for the same work.  It is therefore appropriate to decrease her individual damages liability by the amount she is jointly liable for with 41st Avenue for Gil's work at the building during the 2 weeks in July 2012 and July 2013 (which is $77.60 per week).  This adjustment means that her individual wages liability drops from $1,036.76 to $881.56.  This is also subject to an equal amount of liquidated damages of $881.56.

Gil did work in the summer of 2014 for 2 hours at Frantzis's home (while also working for 25 hours at 41st Avenue).  12 NYCRR § 141-2.11 does not apply to this situation because Gil is not seeking damages under NYLL for work after March 20, 2014; he is seeking compensation under FLSA.  (Damages Spreadsheet at 3-6).  But he has no entitlement under FLSA for the 2 hours of work at her home, because as noted earlier (*supra* at 12-13), the work at her home did not implicate interstate commerce and is therefore not compensable under FLSA.

C.  Pre-Judgment Interest

Gil also seeks pre-judgment interest for his NYLL unpaid wage damages.  (Pl.'s Br. at 18 ("Plaintiff also seeks an award of prejudgment interest on the NYLL claims for unpaid minimum wages.")).  Although it is "well settled" that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin*, 93 F. Supp. 3d at 48.  Gil is entitled to an award of pre-judgment interest on his NYLL damages at a rate of 9% per year.  N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013).  Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.  *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest[.]") (quotations omitted).  In similar cases, which award FLSA damages for the three years permitted under the FLSA statute of limitations and NYLL damages for the period preceding, the midpoint date of the NYLL claims sought in the litigation has been used as the reasonable intermediate date.  *See, e.g.*, *Guaman v. Krill Contracting, Inc.*, No. 14-CV-4242, 2015 WL 3620364, at *11 (E.D.N.Y. June 9, 2015) ("The earliest date Plaintiff's NYLL claim accrued was July 10, 2008 and the latest date Plaintiff's NYLL claim accrued was May 31, 2013.  The reasonable intermediate date would, therefore, be December 21, 2010.").

28

Because there are two different jobs, with different liability for the two Defendants, the pre-judgment interest is somewhat different.  The pre-judgment interest for the NYLL claims arising out of work at 41st Avenue is calculated as follows: Gil's NYLL claims begin on March 17, 2011 and end on March 20, 2014.  The midpoint between these two dates is September 16, 2012.  The total amount ($12,285.16) at 9% a year results in $1,105.66 per year in interest, or $3.03 (rounded) per day, based on 365 days per calendar year.  The Court recommends that pre-judgment interest be awarded in a daily amount of $3.03 from September 16, 2012 until the day final judgment is entered for claims arising out of work at 41st Avenue.  *See Romero v. Rung Charoen Sub, Inc.*, No. 16-CV-1239, 2017 WL 4480758, at *15 (E.D.N.Y. Sept. 30, 2017).

The pre-judgment interest for the NYLL claims arising out of work at Frantzis's home in 2012 and 2013 is calculated as follows: the total amount for 2012 ($474.88) and 2013 ($561.88) at 9% a year results in $42.74 (rounded) and $50.57 (rounded) per year in interest, or $0.12 (rounded) or $0.14 (rounded) per day respectively, based on 365 days per calendar year.  The Court recommends that pre-judgment interest be awarded a daily amount of $0.26 from June 13, 2013[4] until the day final judgment is entered plus $39.48[5] for claims arising out of work at Frantzis's home.

---

[4] June 13, 2013 is the terminal date of the week in 2013 where Gil performed work at Frantzis's home.  The Court declines to calculate the midpoint as Gil performed work in discrete weeks, rather than a continuous period, at Frantzis's home.

[5] This amount reflects the amount of interest accrued on the work performed in 2012 prior to June 13, 2013 (*i.e.* daily interest of $0.12 for the 329 days between July 19, 2012 and June 13, 2013).

F.  <u>Attorney's Fees and Costs</u>

Gil seeks a total of $19,950 in attorney's fees and $738.50 in costs for a total of $20,688.50.  When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary.  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award.  Gil was represented by two attorneys.  Gil's counsel Thomas J. Lamadrid ("Lamadrid") states that he is a graduate of New York University School of Law and was admitted to the New York State Bar in 2015.  He is a third-year associate at Eisner & Dictor, P.C.  (Pl.'s Br. at 20-21; *see also* Affirmation of Thomas J. Lamadrid in Support of Default Judgment dated

February 2, 2018, attached to Pl.'s Br. ("Lamadrid Decl.") ¶ 3).[6] He has provided a general time sheet describing the work performed and time that he spent on this matter. ("Eisner & Dictor, P.C. Slip Listing dated 2/2/2018" attached to Lamadrid Decl., Ex. 8). Gil's counsel Elizabeth Sprotzer ("Sprotzer") states that she graduated from City University of New York School of Law in 2014 and has engaged in employment law practice since that time. She was a staff attorney at Make the Road New York, a non-profit organization. (Declaration of Elizabeth Sprotzer in Support of Default Judgment dated February 2, 2018, attached to Pl.'s Br. ("Sprotzer Decl.") ¶ 5).[7] She has also provided a general time sheet describing the work performed and time that she spent on this matter. ("Case Record" attached to Sprotzer Decl., Ex. 1). Both are seeking their regular billing rates of $250 per hour. (Sprotzer Decl. ¶ 7).

"In recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals." *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15-CV-5737, 2017 WL 5564892, at *2 (E.D.N.Y. Nov. 3, 2017) (quotations omitted), *report and recommendation adopted*, 2017 WL 5564593 (Nov. 18, 2017). "[T]he prevailing hourly

---

[6] A court may take judicial notice of an attorney's admission date to the bar, a matter of public record, and an attorney's website to conduct a lodestar analysis. *See, e.g.*, *Dunn v. Advanced Credit Recovery Inc.*, No. 11-CV-4023, 2012 WL 676350, at *6 (S.D.N.Y. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 1114335 (Apr. 3, 2012). Eisner & Dictor, P.C.'s website and Lamadrid's New York State Bar admissions report confirms that he graduated law school in 2014 and was admitted to the bar in 2015.

[7] Sprotzer moved to withdraw as counsel in this action on June 12, 2018. (Motion to Withdraw, Dkt. No. 21). The Court granted the motion on June 13, 2018. (Order dated June 13, 2018).

rate for partners in this district ranges from $300.00 to $400.00, and a reasonable hourly rate for a senior associate ranges from $200 to $300." *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *9 (E.D.N.Y. Sept. 21, 2015); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates). As such, the rates for both Mr. Lamadrid and Ms. Sprotzer are within the range acceptable for middle to senior-level associates.

Turning next to the reasonableness of the time expended, according to the billing records submitted, Mr. Lamadrid spent 45.9 hours and Ms. Sprotzer spent 33.9 hours researching, drafting the complaint, and filing the motion for default judgment, for a total of 79.8 hours. (Eisner & Dictor, P.C. Slip Listing dated 2/2/2018, Dkt. No. 16, Ex. 8). This far exceeds the number of hours approved in FLSA and NYLL default judgment cases. *See, e.g.*, *Bd. of Trs. of The United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 W.B.P. & A. Funds v. Akro Gen. Contracting, Inc.*, No. 15-CV-04901, 2016 WL 6775467, at *9 (E.D.N.Y. Aug. 15, 2016) (approving 7.1 hours of work by attorney and 2.5 hours by her paralegal for "an unopposed motion for default judgment and associated documents in a case involving no complex issues of law"), *report and recommendation adopted*, 2016 WL 6779487 (Nov. 15, 2016); *Zhang*, 2016 WL 4124304, at *7 (approving total of 22.1 hours in default judgment FLSA case). And Gil fails to cite a case where a court has approved the extraordinarily high number of hours sought in this case. Having reviewed the hours and time records submitted, the Court finds that the hours expended to be unreasonable. As such, the Court reduces the compensable time to 20 hours.

The Court thus respectfully recommends the award of $5,000 in attorney's fees (a total of 20 hours for Mr. Lamadrid and Ms. Sprotzer billed at a rate of $250 per hour).

G. Costs

Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "'identifiable, out-of-pocket disbursements'" are recoverable. *Moon v. Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987)). Gil requests recoupment of the filing fee in the amount of $400. Although no invoices are submitted as evidence, the filing fee is recoverable; the docket indicates the filing fee was paid (Dkt. No. 1). *See, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (filing fees are recoverable without supporting documentation if verified by the docket).

However, the remaining costs, which are predominantly process server fees, for $60, $130, $140, $3, without any additional evidence provided (*e.g.* an invoice) are not recoverable. *See, e.g.*, *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017

WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (denying four fees of $75.00 each for

service of process fees in the absence of supporting documentation).[8]

It is respectfully recommended then that Gil be awarded $400 in costs.

*       *       *

Consolidating the various damages results in the following liability:

|  | 41st Avenue | Home Work |
|---|---|---|
| FLSA Unpaid Wages | $35,162.50 | $0.00 |
| FLSA Liquidated Damages | $35,162.50 | $0.00 |
| NYLL Unpaid Wages | $12,285.16 | $881.56 |
| NYLL Liquidated Damages | $12,093.93 | $881.56 |
| WTPA Fines | $5,000.00 | $0.00 |
| Improper Deductions | $5,010.00 | $0.00 |
| Pre-Judgment Interest | $3.03/day | 0.26/day |
| Accrued Interest | | $39.48 |
| Attorney's Fees | $5,000.00 ||
| Costs | $400.00 ||
| NYSDOL Settlement | ($23,018.58) ||
| Judgment Against 41st Avenue | **$87,095.51** ||
| Judgment Against Frantzis | **$88,898.11** ||

The chart reflects the fact that 41st Avenue and Frantzis are both liable for Gil's

work at 41st Avenue and she is solely liable for work at her home.  It also reflects a

deduction of $23,018.58 which Gil received by virtue of his NYSDOL settlement, and

which he agreed would decrease the amounts sought in default.

---

[8] Although a costs chart is provided, (Eisner & Dictor, P.C. Slip Listing dated
12/19/2017, attached to Lamadrid Decl., Ex. 9), it fails to provide the information
required for the Court to award costs for process servers.  While courts have discretion
to grant appropriate process server fees, such fees must be within the range of costs that
would have been incurred had the United States Marshal Service effected service, *see
United States v. Merritt Meridian Constr. Co.*, 95 F.3d 153, 172 (2d Cir. 1996), which is
currently $65 per hour, 28 C.F.R. § 0.114(a)(3).  The chart does not contain any
information about the number of hours spent by process servers.

Conclusion

For the reasons stated above, it is respectfully recommended that default judgment be entered as follows:

1. Against 41st Avenue in the amount of $87,095.51, plus interest in the amount of $3.03 per day for each day from September 16, 2012 until the date final judgment is entered as calculated by the Clerk of Court.

2. Against Frantzis in the amount of $88,898.11, plus interest in the amount of $3.03 per day for each day from September 16, 2012 until the date final judgment is entered for work performed at 41st Avenue; and $0.26 per day for each day from June 13, 2013 until the date final judgment is entered for work performed at Frantzis's home as calculated by the Clerk of Court.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Gil shall serve a copy of this Report and Recommendation on Defendants and file proof of such service.

/s/ *Sanket J. Bulsara* August 17, 2018
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York