UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LUIS GIL,

                                    Plaintiff,

                                                                    **REPORT AND**
                -against-                                           **RECOMMENDATION**
                                                                    17-CV-1520-ARR-SJB
NIKI FRANTZIS,
95-05 41ST AVENUE LLC,

                                    Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

        On March 17, 2017, Plaintiff Luis Gil ("Gil") filed this wage and hour action

against Defendants Niki Frantzis ("Frantzis") and 95-05 41st Avenue LLC ("41st

Avenue") (collectively, "Defendants") pursuant to the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL").  (Compl. dated Mar. 17, 2017, Dkt. No. 1).

After the Defendants failed to appear or otherwise respond to the Complaint, Gil moved

for a default judgment against Frantzis and 41st Avenue.  (Pl.'s Mot. for Default J.

("Default J. Mot.") dated Feb. 2, 2018, Dkt. No. 16).  On August 17, 2018, the Court

issued a report and recommendation, which found Defendants jointly and severally

liable to Gil for violations of FLSA and NYLL.  (R. & R. ("Default J. R&R") dated Aug. 17,

2018, Dkt. No. 23, at 10–11).  On September 10, 2018, the Honorable Allyne R. Ross

adopted the R&R in part, finding no clear error with regard to its determinations of

liability and damages.  (Order Adopting R. & R. in Part ("Order Adopting R&R") dated

Sept. 10, 2018, Dkt. No. 26).  The only adjustment made by the District Court was with

respect to attorney's fees.  (*Id.*).  The next day, the Clerk of Court entered a default

judgment against Defendants, awarding Gil $200,132.62.  (Default J. dated Sept. 11,

2018, Dkt. No. 27).

Almost three months later, an attorney made an appearance on behalf of Defendants.  (Notice of Appearance by Samuel Drukman dated Nov. 26, 2018, Dkt. No. 28).  The same day, Defendants moved to set aside the Clerk's entry of default and to vacate the default judgment.  (Mot. to Vacate Default J. ("Defs.' Mot.") dated Nov. 26, 2018, Dkt. No. 30).  Judge Ross referred Defendants' motion to the undersigned for a report and recommendation.  (Order Referring Mot. dated Nov. 27, 2018).  For the reasons stated below, it is respectfully recommended that Defendants' motion be granted, the default judgment be vacated, and the case proceed for determination on the merits.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

I.    Background Prior to the Entry of Default Judgment

    A.    Gil's Employment with Defendants

41st Avenue is a 16-unit residential building in Elmhurst, NY.  (Compl. ¶ 8).  Gil has been employed as the superintendent of 41st Avenue since 1996.  (*Id.*).  To date, he continues to work at 41st Avenue.  (Aff. of Luis Gil in Opp'n to Defs.' Mot. ("Gil Aff. II") dated Jan. 4, 2019, Dkt. No. 36, ¶ 2).  Frantzis is the owner of 41st Avenue and is involved in managing the day-to-day operations of the building.  (Aff. of Luis Gil in Supp. of Pl.'s Mot. ("Gil Aff. I") dated Dec. 7, 2017, attached as Ex. 1 to Default J. Mot., Dkt. No. 16, ¶¶ 4–5; Compl. ¶ 6).  From 1996 to 2007, Frantzis's husband, Stratis Frantzis, owned and managed 41st Avenue.  (Gil Aff. I ¶ 4).  Since 2008, Frantzis has owned and managed the day-to-day operations.  (*Id.* ¶¶ 4–5).  Frantzis and 41st Avenue "have performed related activities through unified operations or common control since at least 1996, with the common purpose of operating and maintaining the [building]."  (Compl. ¶ 10).

2

As the superintendent, Gil's job duties include cleaning the exterior areas surrounding the building, cleaning the interior common area, collecting and removing recycling, preparing garbage for pick up, removing snow, and correcting code violations. (Gil Aff. I ¶ 8; Compl. ¶¶ 12, 16).  In addition, Gil is responsible for responding to tenant complaints and requests, performing plumbing repairs, repairing radiators, and performing other general maintenance for apartments.  (Gil Aff. I ¶¶ 8–9; Compl. ¶ 16).

In his Complaint, Gil alleged that throughout his employment, he regularly worked approximately 25 hours per week, seven days per week.  (Gil Aff. I ¶ 8; *see also* Compl. ¶ 16 (alleging that Gil worked between 20 and 30 hours each week)).  Gil lives in an apartment in the building and is on call 24 hours a day, 7 days per week to respond to tenant complaints.  (Gil Aff. I ¶ 3).  Tenants both call and visit Gil's apartment with complaints and requests, and Gil is expected to answer the requests whenever they arise.  (*Id.* ¶ 9).

Gil alleges that Defendants failed to pay him any wages for any of the hours he worked at 41st Avenue and at Frantzis's personal home, (*id.* ¶ 13; Compl. ¶¶ 9, 15, 26), during four periods:

1.     From July 16, 2012 to July 19, 2012, Frantzis employed Gil to perform landscaping and yard work from 8 AM to 4 PM at her home in Whitestone, New York. (Gil Aff. I ¶ 10; Compl. ¶ 23).  Gil continued to perform his regular duties for 41st Avenue while he worked at Frantzis's home, (Compl. ¶ 27), and he worked a total of 57 hours that week.  (Gil Aff. I ¶ 10).

2.     For one week in June 2013, Frantzis employed Gil to paint her home from 8 AM to 4 PM.  (*Id.* ¶ 11; Compl. ¶ 24).  Gil continued to perform his regular duties for

41st Avenue while he worked at Frantzis's home, (Compl. ¶ 27), and he worked a total of 65 hours that week. (Gil Aff. I ¶ 11).

3.      During the summer of 2014, Gil worked approximately two hours at Frantzis's home removing and cleaning shattered safety glass from a sliding door. (*Id.* ¶ 12; Compl. ¶ 25). Gil continued to perform his regular duties for 41st Avenue while he worked at Frantzis's home. (Compl. ¶ 27).

4.      Gil also alleges in his Complaint that at no time, from the beginning of his employment in 1996 to the present, was he ever paid for the 25 hours per week he worked at 41st Avenue. (*Id.* ¶ 9). To date, he claims that this is still the case. (Gil Aff. II ¶ 10).

Gil further alleges in his Complaint that in order to perform his job duties and make necessary repairs required by Defendants, he was required to purchase tools and materials including: a drill, plaster, spatulas, screws, nails, tape, hammers, gloves, screwdrivers, an electric saw, extension cables, lightbulbs, a ladder, a snow shovel, a plumbing snake, a welding torch, welding supplies, protective masks, work clothing and shoes, paint, paint brushes, paint rollers, brooms, mops, rags, scissors, sandpaper, faucet parts, a tile cutter, and a snow blower. (Gil Aff. I ¶ 14; Compl. ¶ 19). Gil spent a total of $1,980 on tools and materials. (Gil Aff. I ¶ 14; Compl. ¶ 19). Gil was never reimbursed for these expenses. (Gil Aff. I ¶ 14). Separately, Gil was required to pay three fines incurred by the building, totaling about $525. (*Id.*; Compl. ¶ 20).

B.      Gil's New York Department of Labor Action

In September 2014, Gil filed a complaint for unpaid wages with the New York State Department of Labor ("NYSDOL") against Defendants. (Gil Aff. I ¶ 15; Compl. ¶ 21). NYSDOL investigated Gil's claims that arose earlier than 2011 until September

2014, and found that Defendants owed Gil unpaid wages. (Gil Aff. I ¶ 15; Compl. ¶ 21). On August 4, 2015, the NYSDOL issued an order to comply against Defendants. (Suppl. Mem. of Law in Supp. of Pl.'s Mot. for Default J. ("Pl.'s Suppl. Br.") dated May 17, 2018, Dkt. No. 19, at 1–2). Frantzis filed a petition for review, and a hearing before the Industrial Board of Appeals was scheduled. (*Id.* at 2). The hearing was never held; Frantzis settled the claims in August 2016 and was ordered to make 24 payments. (Gil Aff. I ¶ 15; Compl. ¶ 21). Gil received only three payments totaling $2,885 before Frantzis stopped making payments in October 2016. (Gil Aff. I ¶ 15; Compl. ¶ 21). On July 21, 2018, Gil received another check for $20,133.58, which the NYSDOL confirmed represented the balance due to Gil under the settlement after fines and penalties. (Letter Regarding Default J. ("Pl.'s Letter") dated July 24, 2018, Dkt. No. 22, at 1).

    C.    <u>Gil's Federal Action</u>

    Gil filed his Complaint in this action on March 17, 2017. It alleges seven causes of action against both Defendants based on FLSA and NYLL: violation of (1) the minimum wage provisions of FLSA, 29 U.S.C. § 206(a), (Compl. ¶¶ 28–30); (2) the New York Minimum Wage law, NYLL § 652 *et seq.*, (*id.* ¶¶ 31–33); (3) the overtime provisions of NYLL, NYLL § 199, (*id.* ¶¶ 34–36); 4) the per-unit wage provisions under 12 NYCRR § 141, (*id.* ¶¶ 37–39); (5) prohibited wage deductions under 12 NYCRR §§ 195-2 and 195-4, (*id.* ¶¶ 40–42); (6) the wage statement provisions of NYLL, NYLL § 195(3), (Compl. ¶¶ 43–45); and (7) the notice and recordkeeping requirements of NYLL, NYLL § 195(1), (*id.* ¶¶ 46–48).

    On March 29, 2017, Gil filed an executed summons indicating that service was made on the corporate Defendant, 41st Avenue. (Summons Returned Executed ("41st Ave. Summons") dated Mar. 29, 2017, Dkt. No. 5). On March 21, 2017, 41st Avenue was

served by delivering a summons and the Complaint to an authorized agent at New York's Secretary of State, pursuant to Federal Rules of Civil Procedure 4(e)(1) and 4(h)(1)(B) and New York Limited Liability Company Law § 303(a).  (*Id.*).

Frantzis was served via "nail and mail" service at two New York addresses: 147-27 21st Avenue, Whitestone, NY 11357 (the "Whitestone address") and 2641 Road Thirteen, Sydney, NY 13849 (the "Sydney address").[1]  (*See* Summons Returned Executed ("Frantzis Whitestone Summons") filed May 15, 2017, Dkt. No. 7; Summons Returned Executed ("Frantzis Sydney Summons I") filed June 6, 2017, Dkt. No. 9).  At the Whitestone address, the process server made three attempts to serve Frantzis personally.  (Frantzis Whitestone Summons).  These attempts were made on April 8, 2017 at 7:42 AM, April 11, 2017 at 3:49 PM, and May 8, 2017 at 7:29 PM.  (*Id.*).  After the third attempt on May 8, 2017, the process server affixed copies of the summons and Complaint to the door of the Whitestone premises, averring it "is the Defendant's dwelling house/usual place of abode."  (*Id.*).  On May 11, 2017, the process server then mailed the materials to the same address.  (*Id.*).

Gil also served Frantzis at the Sydney address, which is "the address at which she is registered with the New York State Department of Motor Vehicles."  (Aff. of Thomas J. Lamadrid ("Lamadrid Aff. I"), attached as Ex. 2 to Default J. Mot., Dkt. No. 16, ¶ 6).  Here also, the process server made three attempts to serve Frantzis.  (Frantzis Sydney

---

[1] Neither the Whitestone nor the Sydney address is on the summons issued by the Clerk of Court.  (*See* Summons Issued Mar. 17, 2017, Dkt. No. 2).  The address on the summonses for both Frantzis and 41st Avenue is the location of 41st Avenue itself, namely 95-05 41st Avenue, Elmhurst, NY 11373 ("Elmhurst address").  (*See id.*).  Defendants do not argue, however, that Frantzis should have been served at the Elmhurst address, and they indicate that her home is the Whitestone address where service was actually attempted.  (Defs.' Mem. of Law in Supp. of Mot. to Vacate ("Defs.' Br."), attached as Ex. 1 to Defs.' Mot., Dkt. No. 30, at 7).

Summons I).  These attempts were made on May 13, 2017 at 7:26 PM, May 18, 2017 at

7:44 AM, and May 22, 2017 at 10:57 AM.  (*Id.*).  After the third attempt on May 22, 2017,

the process server affixed copies of the summons and Complaint to the door of the

premises, which, again, the process server attested "is the Defendant's dwelling

house/usual place of abode."  (*Id.*).  A different process server then mailed the materials

to the Sydney address on May 30, 2017.  (Summons Returned Executed ("Frantzis

Sydney Summons II") filed June 6, 2017, Dkt. No. 10).  After Defendants failed to

appear in the action, on August 11, 2017, the Clerk of Court issued certificates of default

for both Frantzis and 41st Avenue.  (Clerk's Entry of Default ("Default Entry") dated

Aug. 11, 2017, Dkt. No. 15).

Gil moved for default judgment about six months later on February 2, 2018.

(Default J. Mot.).  The motion papers were mailed, pursuant to Local Rule 55(c), to the

Elmhurst, Whitestone, and Sydney addresses.  (Aff. of Service dated Feb. 12, 2018, Dkt.

No. 17).  In his motion, Gil sought recovery of $110,432.74, comprised of: $48,055.75 in

minimum wages, $304.50 in overtime wages, $12,767.70 in NYLL liquidated damages,

$35,359.75 in FLSA liquidated damages, $5,000 in wage statement penalties, $5,010 for

deductions and attendant liquidated damages, $6,265.12 in pre-judgment interest on

NYLL wages, $738.50 in costs, and $19,950 in attorney's fees, less the $23,018.58 in

payments Gil received from Defendants pursuant to their agreement with the NYSDOL.

(*See* Mem. of Law in Supp. of Pl.'s Mot. ("Pl.'s Default J. Br.") dated Feb. 2, 2018,

attached as Ex. 4 to Default J. Mot., Dkt. No. 16, at 21; Pl.'s Letter at 1–2).

On August 17, 2018, the Court issued a report and recommendation.  The Court

recommended granting the motion for default judgment, finding that Gil had alleged

sufficient factual basis to find 41st Avenue and Frantzis jointly and severally liable for

work done at 41st Avenue, and Frantzis individually liable for work done at her personal residence. (Default J. R&R at 10–11, 26–27). The Court recommended awarding Gil $87,095.51 plus interest against 41st Avenue and Frantzis, jointly and severally, and an additional $1,763.12 plus interest against Frantzis individually. (*Id.* at 34).[2] Judge Ross adopted the R&R except with respect to attorney's fees, which she increased from $5,000 to $10,000. (Order Adopting R&R at 8). The Clerk of Court, in calculating the total award for the default judgment, inaccurately counted the joint-and-several damages—now $92,095.51, as per Judge Ross's Order—twice, *i.e.*, as against *both* defendants, making Frantzis separately liable for that amount plus interest in addition to her individual liability of $1,763.12. In other words, the $92,095.51 that should have been awarded against both Defendants jointly and severally was awarded against both defendants separately. This resulted in a total award to Gil of $200,132.62 (including interest, fees, and costs), (Default J., Dkt. No. 27), instead of $101,016.56.[3] Final judgment was entered on September 11, 2018.

II.    Defendants' Appearance in the Federal Action

On November 26, 2018, almost three months after judgment was entered, counsel for Defendants made a notice of appearance in the action and moved to vacate/set aside the entry of default and default judgment. (*See* Defs.' Mot.). Attached to Defendants' motion is a declaration from Frantzis, who is the sole member of 41st

---

[2] Gil mailed a copy of the Court's R&R to Frantzis at all three addresses—those in Whitestone, Elmhurst, and Sydney. (*See* Aff. of Service filed Aug. 20, 2018, Dkt. No. 24).

[3] In their briefs for the motion to set aside default judgment, the parties agree that $101,016.56 is the correct amount that should have been entered by the Clerk of Court. (*See* Defs.' Br. at 2; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. ("Pl.'s Opp'n Br.") dated Jan. 4, 2019, Dkt. No. 38, at 1).

Avenue.  (Decl. of Niki Frantzis ("Frantzis Decl.") attached as Ex. 7 to Defs.' Mot., Dkt. No. 30, ¶ 2).  In her declaration, Frantzis contends that she did not learn of the lawsuit until the end of September 2018 when Gil gave her a copy of the clerk's judgment.  (*Id*. ¶ 8).  Even then, Frantzis—a "Greek-American" for whom "English is not [her] native language"—did not realize that the judgment pertained to Gil's federal lawsuit; she believed that it related to a judgment that had been entered against her and 41st Avenue by the NYSDOL in the state action.  (*Id*. ¶¶ 6, 9–10).  In late October, she reviewed the papers more carefully and only then understood that the default judgment pertained to a different lawsuit, *i.e.*, this federal litigation, for an amount exceeding $200,000; she "immediately sought the advice of an attorney."  (*Id*. ¶ 32).  Frantzis avers that she settled the NYSDOL case in full by paying $34,760.48 in July 2018.  (*Id*. ¶ 9).

Frantzis claims that she never received actual notice of this federal action, including the Complaint, and that she did not see any documents affixed to her door at the Whitestone or Sydney addresses.  (Frantzis Decl. ¶¶ 34–35, 40 ("I have no recollection at all of either myself or the LLC being served with the Summons and Complaint in this lawsuit. . . .  I do not recall ever seeing any documents, legal or otherwise, 'affixed' to the front door of my [Whitestone] house[.]")).  Her son, John Frantzis, also lives at the Whitestone address; Frantzis states her son never received any legal papers in the mail or saw papers affixed to the door.  (*Id*. ¶ 39).  Frantzis posits that, given the ongoing NYSDOL lawsuit, she may have received court papers in the mail with Gil's name on them and assumed it had something to do with the NYSDOL claim, not realizing the papers related to a separate case.  (*Id*. ¶ 34).  As to the Sydney address, Frantzis says that she rarely visits the house, which is in rural upstate New York, and that in 2017 she may have only visited the house once, if at all.  (*Id*. ¶ 40).  It is therefore,

according to Frantzis, very unlikely that service would have been effective at that address. (*Id.*).

Service was made on 41st Avenue via the New York Secretary of State. (41st Ave. Summons). Frantzis contends that the mailing address the Secretary of State had would have been the address of the building itself—and therefore the mail would have been retrieved by Gil. (Frantzis Decl. ¶ 41). Gil, however, provides documentation that through December 18, 2017, the Department of State would have mailed process for 41st Avenue to the *Whitestone* address, not the Elmhurst address. (DOS Database Information for 41st Avenue ("DOS Entity Information"), attached as Ex. 2 to Aff. of Thomas J. Lamadrid ("Lamadrid Aff. II") dated Jan 4, 2019, Dkt. No. 37 (listing the Whitestone address as the "[a]ddress to which DOS [Department of State] will mail process if accepted on behalf of" 41st Avenue)). Nonetheless, Frantzis attests that she "sincerely had no notice or knowledge that this lawsuit existed until weeks after [she] received the Default Judgment, at which [point she] promptly sought to retain a lawyer." (Frantzis Decl. ¶ 42).

DISCUSSION

I.    <u>Legal Standards</u>

Defendants bring their motion pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). (Defs.' Mot. ¶ B). Because there was a final judgment entered, the Court must consider the motion under Rule 60, not Rule 55.[4]  *See* Fed. R. Civ. P. 60(b) (providing the reasons a "court may relieve a party . . . from a final judgment, order, or

---

[4] In addition to vacating the default judgment, Defendants also seek to vacate the clerk's entry of default. (Defs.' Mot. ¶ A). Having decided to recommend vacatur of the default judgment, it is appropriate also to vacate the entry of default.

proceeding"); *Gonzalez v. ERBA Inc.*, No. 15-CV-6037, 2018 WL 1221152, at *1

(E.D.N.Y. Mar. 8, 2018).  In any event, "[t]he same factors are applied in the context of a

Rule 60(b) motion to set aside a default judgment, although they are applied more

rigorously, and the district court must resolve any doubts in the defaulting party's

favor." *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (citing

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).  "[C]ourts apply the

factors more rigorously in the case of a default judgment, because the concepts of

finality and litigation repose are more deeply implicated in the latter action." *Enron Oil

Corp.*, 10 F.3d at 96 (citations omitted).

      Under Rule 60(b), the Court may vacate a default judgment for any of the

following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly
> discovered evidence; (3) fraud, misrepresentation, or other misconduct of
> an adverse party; (4) the judgment is void; (5) the judgment has been
> satisfied, released, or discharged, or a prior judgment upon which it is based
> has been reversed or otherwise vacated, or it is no longer equitable that the
> judgment should have prospective application; or (6) any other reason
> justifying relief from the operation of the judgment.

*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (alterations omitted) (quoting Fed.

R. Civ. P. 60(b)).  Defendants move under Rules 60(b)(1), 60(b)(3), and 60(b)(6).

(Defs.' Mem. of Law in Supp. of Mot. to Vacate ("Defs.' Br."), attached as Ex. 1 to Defs.'

Mot., Dkt. No. 30, at 1).

      In deciding whether to vacate a default judgment, courts generally consider three

principal factors: "'(1) whether the default was willful, (2) whether the defendant

demonstrates the existence of a meritorious defense, and (3) whether, and to what

extent, vacating the default will cause the non[-]defaulting party prejudice.'"[5] *Gonzalez*, 2018 WL 1221152, at *2 (quoting *United States v. Chesir*, 526 F. App'x 60, 61 (2d Cir. 2013)); *accord Sec. & Exch. Comm'n v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998); *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2018 WL 6984837, at *1 (E.D.N.Y. Nov. 16, 2018), *report and recommendation adopted*, 2019 WL 147721 (Jan. 9, 2019).

While a motion to vacate a default judgment is "addressed to the sound discretion" of the court, *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004) (quotations omitted), the Second Circuit has "expressed a strong preference for resolving disputes on the merits." *Green*, 420 F.3d at 104 (quotations omitted); *see Llolla v. Karen Gardens Apartment Corp.* ("*Llolla I*"), No. 12-CV-1356, 2015 WL 13731354, at *2 (E.D.N.Y. July 2, 2015) ("Default judgments are generally disfavored and the criteria for vacating a default judgment pursuant to Rule 60 . . . should be construed generously.") (quotations and alterations omitted), *report and recommendation adopted*, 2016 WL 233665 (Jan. 20, 2016).[6]  For this reason,

---

[5] Any motion made under Rule 60(b) must also be timely.  *See Quintana v. Young Blooming, Inc.*, No. 12-CV-120, 2016 WL 1273231, at *3 (E.D.N.Y. Mar. 30, 2016) ("[A] motion pursuant to Rule 60(b)(1) must be made 'within a reasonable time,' but 'no more than a year after the entry of the judgment.'  Fed. R. Civ. P. 60(c)(1).").  Because judgment was not entered until September 11, 2018, Defendants' motion was made within a year after the entry of judgment.  In addition, Defendants argue in their brief that the motion was made "within a reasonable time" and is timely.  (*See* Defs.' Br. at 9–10, 23).  Gil, who opposes Defendants' motion on other grounds, does not attempt to dispute the timeliness of the motion.  (*See* Pl.'s Opp'n Br.).

[6] The Court does not believe it necessary to resolve the tension between applying the Rule 60(b) standards "more rigorously" and also "generously," other than to conclude that it is appropriate, as a legion of cases hold, to resolve doubts in favor of the party seeking vacatur of a default judgment—particularly when the Rule 60(b) motion is timely—to further the goal of adjudicating cases on the merits.

Courts should resolve all doubts in favor of the party seeking relief from the default judgment when ruling on a motion to vacate. *See Nikolaeva*, 2018 WL 6984837, at *1 (citing *Green*, 420 F.3d at 104).

Defendants argue that the default judgment should be set aside because Frantzis, on behalf of herself and 41st Avenue, never received actual notice of the lawsuit; that they have several meritorious defenses to Gil's claims that would justify reopening the case; and that Gil would not be prejudiced by a vacatur of the default judgment. (*See* Defs.' Br. at 11–21). The Court will proceed by applying each of the three factors in turn.

A.    <u>Willfulness</u>

"Because the central purpose of a default judgment is to protect parties and the courts from harassment and purposeful delay, willfulness must involve more than carelessness or negligence by the defaulting party." *Nikolaeva*, 2018 WL 6984837, at *2 (citation omitted); *see Jaramillo v. Vega*, 675 F. App'x 76, 76 (2d Cir. 2017) ("A default is willful when the conduct is 'more than merely negligent or careless,' but is instead 'egregious and not satisfactorily explained.'") (quoting *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015)); *McNulty*, 137 F.3d at 738 (collecting cases). Among the factors that courts must consider, willfulness is the most important. *Star Asia Int'l, Inc. v. Old Dominion Footwear, Inc.*, No. 18-CV-4741, 2019 WL 2371632, at *1 (S.D.N.Y. June 5, 2019) (citing *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013)).

"[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *McNulty*, 137 F.3d at 738. "Thus, 'where a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the court, such neglect is

inexcusable.'" *Arista Records, Inc. v. Musemeci*, No. 03-CV-4465, 2007 WL 3124545, at *4 (E.D.N.Y. Sept. 18, 2007) (quoting *Yan v. Bocar*, No. 04-CV-4194, 2005 WL 3005338, at *13 (S.D.N.Y. Sept. 8, 2005)), *report and recommendation adopted*, 2007 WL 3145861 (Oct. 25, 2007); *see Frost Belt Int'l Recording Enters., Inc. v. Cold Chillin' Records*, 758 F. Supp. 131, 136 (S.D.N.Y. 1990) ("[U]tter failure to explain the default effectively precludes a finding of excusable neglect.").

Conversely, where there is some doubt that a party received the pleading on which default is based, *e.g.*, *Enron Oil Corp.*, 10 F.3d at 98, confused two lawsuits that were proceeding simultaneously, *e.g.*, *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983), or makes an explainable, honest misunderstanding of the sequence of court proceedings, *e.g.*, *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1078 (2d Cir. 1995), the default should not be deemed willful.

The Court concludes that Defendants' conduct does not amount to a willful default.

Defendants contend they did not receive actual notice of this action prior to the entry of default judgment. As to the individual Defendant, neither Frantzis nor her son recall seeing any papers affixed to the door of the Whitestone address where they both live. (Frantzis Decl. ¶¶ 35, 39; Decl. of Ioannis Frantzis ("John Frantzis Decl.") dated Jan. 24, 2019, Dkt. No. 40, ¶ 10). For the corporate defendant, they allege that the mail from the Secretary of State was sent to an address where mail was collected by Plaintiff himself. (Frantzis Decl. ¶ 41). The Court has serious reason to doubt the suggestion that Defendants did not receive notice of the lawsuit.

Frantzis was served at two different addresses via "nail and mail" service, which although generally disfavored—*Perdomo v. Chau Shing Wong*, 275 A.D.2d 357, 358

(N.Y. App. Div., 2d Dep't 2000) ("[G]enerally, in order to avail oneself of 'nail and mail' service pursuant to CPLR 308(4), due diligence in attempting service pursuant to CPLR 308(1) and (2) must be demonstrated[.]"); *see also Goetz v. Synthesys Techs., Inc.*, 415 F.3d 481, 483 (5th Cir. 2005) ("[N]ail-and-mail service . . . is a disfavored method of service in New York[.]") (quotations omitted)—was preceded in this case by multiple attempts to personally serve her.  (*See* Frantzis Whitestone Summons; Frantzis Sydney Summons I).  This "nail and mail" service was also accompanied by simultaneous mailing of the Complaint to the two addresses.  (Frantzis Whitestone Summons; Frantzis Sydney Summons II).

41st Avenue was served via the Secretary of State not at the address Frantzis claims was in Gil's control, but the Whitestone address, (41st Ave. Summons; DOS Entity Information), which Frantzis does not dispute is her address and where she receives mail, (Frantzis Decl. ¶¶ 34–35).  Indeed, she concedes the Whitestone address is her primary residence.  (*Id*. ¶ 35).  And ultimately, Frantzis's son does not dispute receiving mailings and documents in the case, and attributes the failure to appear not to absence of notice but other reasons.  (*E.g*., John Frantzis Decl. ¶ 18 ("Failure [to answer this lawsuit on time] was the result of three things: a lack of legal knowledge and sophistication; total confusion of this lawsuit with the NYS[DOL] proceeding pending at or around the same time; and, to a much lesser extent, simple forgetfulness in the midst of a busy life.")).  The Court does not, therefore, credit Defendants' arguments that they did not have actual notice of this federal lawsuit.

Nonetheless, there are sufficient grounds to believe that failure to respond was not willful.  Frantzis states she did not recognize that the papers from this action she received—on behalf of herself and on behalf of 41st Avenue—were separate and distinct

from those related to the NYSDOL action.  (*See* Frantzis Decl. ¶¶ 9–10).  Her son attests

to the same confusion.  (John Frantzis Decl. ¶¶ 12, 18).  They also point out that they

have little legal training and Frantzis is not English-language proficient.  (Frantzis Decl.

¶¶ 6–7; John Frantzis Decl. ¶¶ 6–8).

Such confusion is consistent with negligence courts have recognized as excusable

and a basis to vacate a default judgment.  "Courts in the Second Circuit have on occasion

excused a default resulting from a good faith mix-up between two matters."  *Durso v.*

*Barsyl Supermarkets Inc.*, No. 11-CV-5544, 2016 WL 3546330, at *2 (E.D.N.Y. June 23,

2016); *see, e.g.*, *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-52, 2013 WL

1809637, at *4–5 (S.D.N.Y. Apr. 30, 2013) ("Mr. Tress [manager of corporate defendant

WP] realized that there was a separate action in federal court in April 2012, when he

received the Notice of Motion for Default. . . .  The Court accepts Mr. Tress's explanation

concerning his initial confusion as to the nature of the federal action. . . .  Both

declarants [Mr. Tress and WP's attorney] state that WP's failure to answer was not a

deliberate strategic decision, and, resolving all doubts in favor of the moving part[y], the

Court will assume that this is the case.") (citations omitted) (granting motion to vacate

default judgment); *Moore v. Caledonia Cent. Supervisory Union*, No. 11-CV-276, 2012

WL 4815529, at *2 (D. Vt. Oct. 10, 2012) ("Defendants argue their default was not willful

because there was understandable confusion as the documents served concerned two

related cases[.]  Defendants' conduct does not rise to the level of deliberateness or

egregiousness required to find willfulness."); *Salmassi e. Kfr. v. Euro-Am. Container*

*Line Ltd.*, No. 08-CV-4892, 2010 WL 2194827, at *7 (S.D.N.Y. June 1, 2010) ("EACL

was confused because of Plaintiff's then-pending suit in Hong Kong . . . involving

identical claims and damages and for which EACL had already posted security in Hong

Kong.  The proximity in time and identical subject matter of the suits establish
'excusable neglect' by EACL.").

This case is similar to *Davis v. Musler*, where the Second Circuit reversed a
district court's denial of a motion to vacate a default judgment.  713 F.2d at 917.  In
*Davis*, the plaintiff commenced a lawsuit in the Southern District of New York that went
to trial and—after appeals were taken to the Second Circuit—resulted in several
judgments, including one against Musler.  *Id.* at 908.  The plaintiff brought a second
lawsuit during the appeal of the first lawsuit, alleging a similar tort and seeking the
same amount of damages as he had in the first action; he also claimed that Musler had
conspired to evade the judgment in the first action.  *Id.* at 908–09.  Musler did not
appear in the second action, but three months after a default judgment was entered
moved to vacate under Rules 55(c) and 60(b).  *Id.* at 910.  Musler argued that he had
"mistakenly assumed that these papers related to the supplementary proceedings that
were ongoing at the time, and did not realize . . . that he . . . had been named as [a]
defendant[ ] in a second lawsuit."  *Id.* at 915.  The Second Circuit reversed the district
court's denial of the motion to vacate, finding "[t]he fact that Musler vigorously
contested the supplementary proceedings, with the assistance of counsel, but did not
respond to the second complaint, which sought similar relief, lends some credence to
defendants' explanation."  *Davis*, 713 F.2d at 915 (citing as an analogous case *McVicker
v. Donnelly*, 95 F.R.D. 353, 355 (E.D. Pa. 1982) ("This confusion resulting from the time
proximity and subject matter similarity of the two proceedings clearly demonstrate that
defendant's failure to respond constitutes 'excusable neglect.'")).

Similarly, the confusion of Defendants here is somewhat understandable.  The
Complaint in this case refers to the NYSDOL matter, (Compl. ¶ 21), and seeks to collect

unpaid wages from Defendants that were also the subject of the NYSDOL proceeding. (Pl.'s Suppl. Br. at 9 ("Plaintiff is entitled to recover amounts that are subject to the NYSDOL settlement less the settlement payments he has already received.")).  The two matters were pending simultaneously.  Defendants settled the NYSDOL case on or around May 16, 2016; however, their payment obligations extended from August 2016 for a period of 24 months, and during this period they stopped making payments.  (*Id.* at 2).  In the federal action, Gil was attempting to receive "the total wages owed to him up until the filing of the complaint . . . , less the amount already received through the [NYS]DOL settlement."  (Pl.'s Default J. Br. at 13).  In the time since Gil moved for default judgment, Defendants have paid Gil the full NYSDOL settlement amount. (Frantzis Decl. ¶ 9).  This occurred in July 2018, (*id.*), which was more than 15 months after the federal suit was filed.[7]

Gil's attorneys hotly dispute the idea that Defendants did not appreciate that they had been sued in federal court in a matter different from the pending NYSDOL action. One of Gil's attorneys, Thomas Lamadrid ("Lamadrid") states that he received a phone call on February 15, 2018 (about two weeks after the motion for default judgment was filed) from John Frantzis, who told him that he had received a letter in the mail about Niki Frantzis's "so-called super."  (Lamadrid Aff. II ¶ 11).  According to Lamadrid, John Frantzis "asked whether the lawsuit was for 'stopping payment' [of the NYSDOL settlement] or if it was a new lawsuit," to which Lamadrid responded that it was a new lawsuit.  (*Id.*).  John Frantzis apparently said that his lawyer would be contacting

---

[7] Because Frantzis has made the remaining payments to Gil from the NYSDOL settlement, Gil would not be entitled to those wages even under the current default judgment.

Lamadrid, who memorialized the conversation in an email to his then-co-counsel Elizabeth Sprotzer. (*Id*.). Even Lamadrid's account, which suggests that John Frantzis was calling to ask whether "it was a new lawsuit," reflects some lack of understanding on Defendants' part.

John Frantzis's own account disputes that a distinction between the two actions was made clear to him on the phone. He acknowledges that he made a phone call to Gil's attorneys, but "the conversation did not go as Mr. Lamadrid has described it." (John Frantzis Decl. ¶ 15). Because Frantzis had stopped making settlement payments pursuant to the NYSDOL action, John Frantzis claims that he called Lamadrid regarding a document he believed related to the NYSDOL case. (*Id*.). He contends that he would not have used language like "so-called super" and that "it was not made clear to [him], or not described in a way that [he] would clearly understand, that the document [he and Frantzis] received had to do with an entirely new lawsuit, separate from the NYS[DOL] proceeding." (*Id*.). He also claims that he does not recall saying a lawyer would be contacting Lamadrid. (*Id*. ¶ 16). Due to these circumstances, he and Frantzis believed that any mailing they received in or around February 2018 had to do with the NYSDOL action. (Frantzis Decl. ¶¶ 9–11; John Frantzis Decl. ¶¶ 12–13).

These declarations give conflicting versions of the same events. And as noted, even Lamadrid's declaration suggests John Frantzis had some confusion; his lack of understanding is what prompted the phone call. In any event, the Court cannot resolve what was said during the phone call based on the papers alone. Nor would doing so result in the Court ruling in Gil's favor. It is Niki Frantzis who is the individual defendant in the case, and she is the sole member of 41st Avenue, and the person against whom the default judgment has been entered, not her son. There is nothing to counter

19

her version of events that she was honestly confused.  (*See* Frantzis Decl. ¶¶ 9–11).  But even if there were, it would be appropriate to resolve any doubts in her favor.  *See Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 77 (E.D.N.Y. 2010) ("Courts should 'resolve any doubt about [a defendant's] willfulness in [their] favor.'") (quoting *Raheim v. N.Y.C. Health and Hosps. Corp.*, No. 96-CV-1045, 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007)).

The Court, therefore, concludes that Defendants' default was not willful.

B.    Meritorious Defense

Before the Court may grant a motion to set aside a default judgment, defendants must present a meritorious defense.  *Nikolaeva*, 2018 WL 6984837, at *3.  That is, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense."  *Enron Oil Corp.*, 10 F.3d at 98.  "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  *Id.*; *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("To satisfy the criterion of a meritorious defense, the defense need not be ultimately persuasive at this stage.") (quotations omitted).  This requirement, like the others for vacating a default, "should be construed generously."  *Gonzalez*, 2018 WL 1221152, at *3 (quotations omitted).  While "the Defendant must go further than merely alleging that a defense exists[,] the threshold is very low—the movant need only present some evidence demonstrating 'that if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand.'"  *Micolo v. Brennan*, No. 07-CV-4901, 2009 WL 742729, at *10 (E.D.N.Y. Mar. 18, 2009) (quotations

omitted) (adopting report and recommendation, and quoting *In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985)).

Defendants' proposed answer asserts 13 affirmative defenses, including defenses based on the applicable statutes of limitation and estoppel, and arguments that Defendants are not engaged in "commerce" as defined by FLSA and NYLL, that Gil is not an employee within the meaning of the statutes, and that Gil "was paid cash and otherwise compensated for all of the work alleged in the Complaint." (Proposed Answer, attached as Ex. E to Defs.' Br., Dkt. No. 30, ¶¶ 49–61). However, the only defenses that Defendants focus on in their briefs are (1) that Gil should be classified as an independent contractor, and (2) that Gil was paid for the work he did at 41st Avenue and Frantzis's home. (Defs.' Br. at 16–17, 20). These are the only non-conclusory defenses asserted and the only ones that the Court will consider in connection with their motion.

The Court finds that it would have some determination to make on the second defense. In her declaration, Frantzis claims that she paid Gil for his work, in the form of a rent-free apartment with a market-rate of $1,800 and in cash payments of $150 to $250 for repair jobs. (*See* Frantzis Decl. ¶¶ 18–19). She also attests that if a job would take more than 8 hours a day to complete, she would pay him around $175 a day in cash. (*Id.* ¶ 19).

Gil contends this argument by saying Frantzis's testimony only "appears to challenge the amount of damages, [but that] in order to vacate the default, Defendants must offer evidence sufficient to establish a *complete* defense." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. ("Pl.'s Opp'n Br.") dated Jan. 4, 2019, Dkt. No. 38, at 10; *see also id.* at 13). The case Gil cites for this proposition, *State Street Bank & Trust Co. v.*

*Inversiones Errazuriz Limitada*, does not extend as far as Gil suggests.  The *State Street* court did affirm a finding that defendants had not established a meritorious defense, but only because "[t]he defendants . . . failed to present proof even minimally sufficient to show the existence of a meritorious defense."  374 F.3d at 168 (quotations and alterations omitted).  The court did not hold that a defense that constitutes recalculation of damages and the judgment imposed is not a complete defense, because it does not go to liability.  And that, indeed, is not the law.  *See, e.g.*, *Gonzalez*, 2018 WL 1221152, at *3 (E.D.N.Y. Mar. 8, 2018) ("[Defendant] Akkaya represents that the Plaintiff has miscalculated his hours, and that the Defendants should receive the benefit of the FLSA good faith exception.  As the Plaintiff admits, under the FLSA, a court may deny liquidated damages if an employer can show that it acted in good faith with objectively reasonable grounds for believing that its acts or omissions did not violate the FLSA. . . . [T]he Court finds that the Defendants have made an adequate showing that the Court would have some determination to make.  Therefore, th[e meritorious defense] factor weighs in favor of vacating the default judgment.") (quotations omitted); *Lopez v. Traffic Bar & Rest. Inc.*, No. 12-CV-8111, 2015 WL 545190, at *5 (S.D.N.Y. Feb. 9, 2015) ("Here, the defendants have provided sworn declarations that assert that the plaintiffs were never employed by Traffic Bar and that all Traffic Bar employees were paid the minimum wage.  Though far from detailed, such facts are sufficient to establish a meritorious defense for the purpose of a motion to vacate default judgment[.]") (citations omitted); *Worthley v. Glob. Resourcing LLC*, No. 18-CV-3924, 2019 WL 1557827, at *2 (D. Ariz. Apr. 10, 2019) ("Defendant . . . plausibly points to several potentially meritorious defenses [to Plaintiff's FLSA claims], including that the damages are potentially offset by the amount of money that Plaintiff owes the Defendants from a

personal loan[.]  At this stage, those allegations are sufficient to state a potentially meritorious defense.") (granting vacatur of default judgment).

But in any event, Gil mischaracterizes and minimizes Defendants' asserted defense.  They seek not only a minimization of damages, but contend that Gil is not entitled to any wages because he was fully paid.  (Defs.' Reply in Supp. dated Jan. 24, 2019, Dkt. No. 39, at 9 ("[T]here still remains the matter of determining the amount of money Plaintiff was actually paid, and whether such payments were sufficient to satisfy the requirements of FLSA, NYLL and other applicable law, thus providing a 'complete' defense to the Plaintiff's claims.")).  That is a complete defense.  *See, e.g.*, *Llolla v. Karen Gardens Apartment Corp.* ("*Llolla II*"), No. 12-CV-1356, 2016 WL 233665, at *4 (E.D.N.Y. Jan. 20, 2016) ("[I]n the context of a motion to vacate a default, a defense that the parties were properly paid constitutes a meritorious defense.") (quotations omitted) (granting vacatur of default judgment); *cf. Addison*, 272 F.R.D. at 81 (same).

Gil's contention that Defendants' non-payment defense is just conclusory is belied by Defendants' affidavits.  Frantzis contends, contrary to Gil's allegations that he received no payment for the work he did, that she paid him in cash "anywhere from $150.00 to $250.00" for repair jobs at 41st Avenue "on a strictly as-needed basis."  (*Id.* ¶¶ 19, 22 (Gil "was paid cash for *all* repair and maintenance work at the Building, which he performed on an as-needed basis while at the same time working for other employers.")).  Frantzis also notes that Gil lived rent-free in an apartment in 41st Avenue whose market-rate rent is about $1,800 a month.  (*Id.* ¶ 18).  She also contends that Gil is "a professional handyman with many projects going on at the same time," that "Gil purchased his own tools and equipment, and used them for such construction or maintenance work that he did for other employers, or for himself," and that she

"never forced or required Gil to purchase any tools or equipment." (*Id.* ¶ 21). While Gil still lives in the building, Frantzis says that after he filed his complaint with the NYSDOL, 41st Avenue "no longer hired him to perform maintenance and repair projects at the Building." (Frantzis Decl. ¶ 26).

As to the first defense—that Gil is an independent contractor, not an employee— there is some doubt that this is a meritorious defense, particularly in light of the NYSDOL's prior award of back wages. (*See also* Pl.'s Opp'n Br. at 11–13 (arguing that Defendants fail to establish that Gil is an independent contractor because, *inter alia*, he meets the "economic reality" test; and that Defendants are required to employ a superintendent at 41st Avenue pursuant to New York City's Housing Maintenance Code)). But because the Court concludes at least one defense is meritorious, it need not resolve whether Defendants have a viable independent contractor defense. *See Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311, 2019 WL 2233828, at *6 n.6 (E.D.N.Y. May 22, 2019) ("In addition to Rodriguez's argument that Plaintiff did not comply with the requirements of the RPAPL, Rodriguez asserts several other affirmative defenses[.] Because the Court finds that Rodriguez has articulated a potentially meritorious defense . . . , the Court declines to make a finding as to whether all of Rodriguez's affirmative defenses are potentially meritorious.").

C.    Prejudice

"To establish prejudice in the context of a default, there must be a showing that 'the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Llolla I*, 2015 WL 13731354, at *4 (quoting *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002)); *see also Davis*, 713 F.2d at 916. "[D]elay alone is not a sufficient basis for establishing

prejudice, and the plaintiff must instead show something more, such as that the delay may thwart plaintiff's recovery or remedy." *Llolla I*, 2015 WL 13731354, at *4 (quotations and alterations omitted) (citing *Green*, 420 F.3d at 110); *see also Gonzalez*, 2018 WL 1221152, at *4 ("Prejudice may be shown if the party's ability to pursue the claim has been hindered since the entry of the judgment or by the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment. The Court acknowledges that some prejudice is inherent in the delay that has resulted from the Defendants' conduct. However, delay alone is not a sufficient basis for establishing prejudice.") (quotations and citations omitted).

Gil claims that vacating the default judgment will prejudice him because "the additional delay may make it more difficult to recover should Frantzis have other creditors who bring claims while this action proceeds." (Pl.'s Opp'n Br. at 14). Additionally, Gil argues that he "will have increased difficulty with discovery" because of the passage of time, and the fading memories of potential witnesses, who are necessary in light of the absence of documentary evidence. (*Id.*).

These contentions are without merit and do not constitute prejudice. Although some delay has been created because a default judgment may be followed by litigation, the prejudice appears minimal. The principal witnesses appear to be Gil, Frantzis, and her son. The declarations each party has provided do not suggest fading memories or a lack of knowledge. Indeed, Gil has asserted that the conduct of Defendants is as it has always been—that he continues to work as a super in the same capacity as he did previously, and Defendants fail to pay him. (Gil Aff. II ¶ 2). The case's merits do not turn on a single event from many years ago, but on the alleged same course of conduct that persisted for many years and continues unabated. And Gil himself has not acted

with dispatch, waiting almost six months from the entry of default to move for default judgment. (*See* Default Entry (dated August 11, 2017); Default J. Mot. (dated February 2, 2018)).

As for potential competing creditors, this is unsupported conjecture. No detail is provided for the assertion that Defendants could not or would not satisfy a judgment; indeed, they have hired counsel to represent them, and are not proceeding *pro se* or made any other suggestions of being unable to pay a future judgment. Gil's arguments are too generic to constitute prejudice, particularly in light of the preference to resolve cases on the merits. *See, e.g.*, *Llolla I*, 2015 WL 13731354, at *4 ("The record clearly demonstrates that Llolla has suffered no prejudice. His only arguments to the contrary are speculation that KGA may attempt to hide its assets in order to evade paying a judgment, and that his own memory of the facts supporting his claim may fade as time goes by."); *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014) ("[T]he Plaintiff fails to specify any particular prejudice it would suffer as a result of vacating the default. The delay occasioned thus far by the Defendants' default, while spanning more than a year, has not been so prolonged as to raise a serious risk of lost evidence or increased difficulties of discovery."); *Addison*, 272 F.R.D. at 82 ("[T]he Plaintiffs argue that because of the Defendants' delay there *may* have been a degradation of evidence such that memories of potential witnesses *may* have faded[.] The Court finds that this speculative prejudice does not outweigh the fact that the

Defendants['] default was not willful and that the Defendants have presented a meritorious defense.") (emphasis in original) (vacating entry of default).[8]

*     *     *

Because the Court finds that all three factors weigh in favor of setting aside the entry of default and the default judgment, the Court need not address Defendants' argument that Gil engaged in misrepresentation under Rule 60(b)(3), (Defs.' Br. at 20–21), which allows a court to "relieve a party from final judgment . . . due to fraud." *Capitol Records, LLC v. Defries*, No. 11-CV-6808, 2013 WL 3055322, at *7 (S.D.N.Y. June 14, 2013); *see, e.g.*, *Nature's First Inc. v. Nature's First Law, Inc.*, 436 F. Supp. 2d 368, 377 (D. Conn. 2006) ("Because this Court has already found that the Default Judgment and Permanent Injunction should be vacated pursuant to Federal Rule of Civil Procedure 60(b)(4), it need not address the parties' arguments regarding stay and vacatur pursuant to Rules 60(b)(3) and 60(b)(6).").

---

[8] The Court reserves its discretion to award attorney's fees and costs for Gil's time and expenses incurred in litigating the default judgment motion because, while the confusion identified by Defendants may be sufficient to vacate the default judgment, the Court does believe service was properly made on Defendants. *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001) ("The imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation."); *see, e.g.*, *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008) ("[C]ourts in this Circuit have consistently permitted an award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment. Importantly, an award of attorneys' fees and costs upon vacating an entry of default does not require a finding of willfulness on the part of the defaulting party.") (quotations and citations omitted); *Gonzalez*, 2018 WL 1221152, at *4 ("[T]he Court will attempt to mitigate [Plaintiff's] prejudice by awarding sanctions in the form of attorneys' fees and costs incurred by the Plaintiff in bringing the motion for default judgment and opposing the instant motion.").

<u>CONCLUSION</u>

For the reasons stated above, it is respectfully recommended that Defendants' motion be granted, the entry of default and default judgment be vacated, Defendants be permitted to answer the Complaint, and the case be reopened.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.").

SO ORDERED.

<u>/s/ Sanket J. Bulsara</u> <u>August 22, 2019</u>
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

28