UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Luis Gil,<br><br>*Plaintiff*,<br><br>– against –<br><br>Niki Frantzis and<br>95-05 41st Avenue, LLC,<br><br>*Defendants*. | 17-CV-1520 (ARR) (SJB)<br><br>**Not for Publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

The plaintiff in this case, Luis Gil, brought suit against defendants Niki Frantzis ("Frantzis") and 95-05 41st Avenue LLCs ("41st Avenue") (collectively, "defendants"), alleging violations of the minimum wage provisions of the FLSA and NYLL, Compl. ¶¶ 28–30, 31–33, ECF No. 1, and various overtime, wage deduction, and notice and record-keeping provisions of the NYLL and the NYCRR, Compl. ¶¶ 34–48. Following defendants' failure to answer the complaint and some three months after the entry of a default judgment against them, defendants moved to set aside the entry of default and vacate the default judgment, a motion that I referred for a Report and Recommendation (R&R) to the Honorable Sanket J. Bulsara, United States Magistrate Judge. Judge Bulsara issued his R&R on August 22, 2019, recommending that defendants' motion be granted and that the lawsuit proceed to a resolution on the merits. Plaintiff has filed objections to almost all aspects of the R&R, urging that the default judgment not be disturbed. Because I find that Judge Bulsara's R&R withstands plaintiff's objections under the applicable standard of review, and because I find no clear error in those portions of the R&R to which plaintiff lodges no objections, I adopt his recommended disposition in its entirety.

## BACKGROUND

*Plaintiff's Employment with Defendants*

From 1996 to the present date, Gil has worked as the superintendent of a sixteen-unit apartment building located at 95-05 41st Avenue, Elmhurst, NY 11373 ("the building"). Gil Aff. III ¶¶ 1–2, ECF No. 36. During the same period, he has lived in an apartment in the building for which he pays no rent. *Id.*; Niki Frantzis Decl. ¶ 22, ECF No. 30-7. From 1996 to 2007, the building was owned and managed by Stratis Frantzis, Niki Frantzis's husband. Gil Aff. I ¶ 4, ECF No. 16-1. In 2007, Stratis Frantzis died, transferring ownership of the building to Niki Frantzis. *Id.* She began managing the property in approximately 2008. *Id.* The apartment building is now the sole asset of 41st Avenue, an LLC that she formed in 2013. Niki Frantzis Decl. ¶¶ 4–5, 14. During the relevant period, Niki Frantzis was the sole owner and manager of 41st Avenue. Niki Frantzis Decl. ¶ 2.

   a. *Gil's On-Site Employment*

As superintendent of the building, Gil's responsibilities include cleaning the building's common areas, collecting and removing garbage, clearing snow and leaves, collecting tenants' rent payments, correcting code violations, and responding to tenants' complaints and requests. Gil Aff. I ¶¶ 8, 9. Additionally, Gil performs general building maintenance, including repairs of plumbing, radiators, and door locks. Gil Aff. I ¶ 8.

Frantzis and Gil dispute the number of hours that Gil devoted to his responsibilities as superintendent of the building. Gil contends that he spent approximately 25 hours per week in this role, Gil Aff. I ¶ 8, while Frantzis asserts that Gil's superintendent duties required only 15 hours of work per week, Niki Frantzis Decl. ¶ 18, 22.

The parties also dispute Gil's compensation. Gil contends that Frantzis never paid him any wages for his work as superintendent, Gil Aff. I ¶ 13; Compl. ¶ 9, whereas Frantzis attests that Gil

was properly compensated for all of his work. According to Frantzis, in exchange for his work as superintendent, Gil was permitted to reside rent-free in an apartment worth approximately $1,800 per month. Niki Frantzis Decl. ¶ 22. Additionally, she paid him between $150 and $250 in cash for each job he completed at the building on an as-needed basis, Niki Frantzis Decl. ¶ 19, and if he worked longer than an 8-hour day on a job, Niki Frantzis paid him approximately $175, *id.*

b. *Gil's Independent Work for Niki Frantzis*

In addition to his responsibilities as superintendent, Frantzis hired Gil to perform work at her home, located at 147-27 21st Avenue, Whitestone, New York. Gil Aff. I ¶ 6; Compl. ¶ 22. The parties dispute the number of jobs that Gil completed at Frantzis's home, the amount of time he dedicated to those jobs, and whether he was properly compensated for them.

Gil contends that he was hired to complete maintenance and landscaping tasks at Frantzis's residence on three separate occasions: in 2012, he performed landscaping services eight hours per day for three to four days, Gil Aff. I ¶ 10; in 2013, he painted the interior of Frantzis's home over the course of five 8-hour days, *Id.* ¶ 11; and in 2014, he spent two hours removing a shattered glass door from her home. *Id.* ¶ 12. As with his duties as superintendent, Gil asserted that he was not paid for any of this work. *Id.* ¶ 13. By contrast, Frantzis contends that she only once hired Gil for a task at her home. Niki Frantzis Decl. ¶ 23. On that occasion, Gil spent one day landscaping, for which Frantzis paid him $250. *Id.* ¶ 23.

c. *Handyman Tools*

Gil alleges that in order to fulfill his responsibilities at the building, he was required to purchase tools and equipment at a total cost of approximately $1,980. Gil Aff. I ¶ 14; Compl. ¶ 19 According to Frantzis, Gil was never required to purchase tools or equipment in the course of his employment with her or 41st Avenue. Niki Frantzis Decl. ¶ 21. Rather, he purchased these items

himself and used them to complete other construction and maintenance jobs outside the scope of his employment with defendants. *Id.*

*The New York State Department of Labor ("NYSDOL") Proceeding*

Gil filed a complaint with the NYSDOL in September 2014, alleging that defendants owed him unpaid wages. Gil Aff. I ¶ 15; Compl. ¶ 21. The matter settled in August 2016, at which time Frantzis agreed to make twenty-four payments to Gil. Gil Aff. I ¶ 15; Compl. ¶ 21. Frantzis paid Gil three installments of the settlement before halting her payments in October 2016. Gil Aff. I ¶ 15; Compl. ¶ 21. On July 21, 2018, Gil received a check for $20,133.58—the remaining balance on the settlement, after "fines and penalties." Letter Regarding NYSDOL Settlement 1, ECF No. 22.

*The Instant Federal Action*

Prior to receiving the bulk of his settlement payment for the NYSDOL matter, Gil, on March 17, 2017, brought this suit alleging seven wage and hour claims pursuant to the FLSA and the NYLL. These claims included minimum wage, overtime, per-unit wage, wage deduction, wage statement, and notice and recordkeeping violations. Compl. ¶¶ 28–48. After filing his complaint, Gil attempted to serve process on both defendants.

    a. Service on 41st Avenue

New York's Secretary of State received process on behalf of 41st Avenue on March 21, 2017, and subsequently mailed it to the address on record for the LLC in accordance with Fed. R. Civ. P. 4(e)(1) and New York Limited Liability Company Law § 303(a). *See* Aff. of Service, ECF No. 5. The parties disagree as to the address for the company recorded with New York's Secretary of State at the relevant time. Frantzis contends that the Secretary's mailing would have been directed to 95-05 41st Avenue, Elmhurst, NY—the apartment building owned by the LLC where Gil resided. Niki Frantzis Decl. ¶ 41. Gil proffered contradictory evidence—that the company's

4

address of record was 147-27 21st Avenue, Whitestone, New York ("Whitestone address"), where Frantzis resided. DOS Entity Information, ECF No. 37-2. Regardless, Frantzis contends that she never received service of process on behalf of her company, 41st Avenue. Niki Frantzis Decl. ¶ 41.

    b. *Service on Niki Frantzis*

Gil served Frantzis in her individual capacity using "nail and mail" service at two different New York addresses. Three attempts were made to serve Frantzis at her Whitestone address. Whitestone Aff. of Service, ECF No. 7. *See* Frantzis Aff. ¶ 35. On the third attempt, the process was affixed to her door and three days later, process was mailed to the Whitestone address. Whitestone Aff. of Service.

Service of process was also attempted at the address Frantzis used to register with the New York State Department of Motor Vehicles—2641 Road Thirteen, Sydney, NY ("Sydney address"). Lamadrid Aff. ¶ 6, ECF No. 16-2. Again, three attempts were made to effect personal service at the Sydney address before process was affixed to the door, Sydney Aff. of Service, ECF No. 9, and mailed to the Sydney address, *see* Sydney Aff. of Mailing, ECF No. 10.

Despite these multiple attempts at service, Niki Frantzis attested that she does not recall seeing the documents posted on her door or receiving them in the mail. Niki Frantzis Decl. ¶¶ 34–35, 40. Nor does she recall a process server coming to her door. *Id.* ¶¶ 37–38. She stated that the Sydney address is her weekend retreat in rural upstate New York; she visited it no more than once in 2017 and not at all in 2018. *Id.* ¶ 40. Further, Frantzis contends that even if she received process by mail, which she does not recall, she may have disregarded it, believing that it was related to the NYSDOL matter. *Id.* ¶ 34.

    *The Default Judgment*

On February 2, 2018, after receiving no response to his complaint and securing from the Clerk of Court the entry of a default on the record, Gil moved for a default judgment. Pl.'s Mot.

5

for Default J. ("Default J. Mot."), ECF No. 16. I referred the motion to Judge Bulsara, who issued his R&R recommending that judgment be entered against defendants. Default J. R&R, ECF No. 23. I adopted his recommendations, adjusting only his finding with regard to attorney's fees. Order Adopting Default J. R&R in Part, Sept. 10, 2018, ECF No. 26. The Clerk of Court erroneously entered a default judgment against defendants in the total amount of $200,132.62 to Gil. Default J., ECF No. 27. Both parties agree that the proper award should have been $101,016.56, based on Judge Bulsara's R&R, adjusted for a slight increase in attorney's fees. *See* Default J. R&R 34; Order Adopting R&R 8; Pl.'s Mem. Of Law in Opp'n to Defs.' Mot. 1, ECF No. 38; Mot. To Vacate Default J. 2, ECF No. 30.

*The Motion to Vacate the Default Judgment*

Frantzis recalled that Gil had hand-delivered legal papers to her (in fact, a copy of the default judgment) in late September 2018. Niki Frantzis Decl. ¶ 41. She set them aside without reading them, however, as she assumed that they related to the NYSDOL proceeding Gil had brought against her. *Id.* ¶ 32. When she finally reviewed the papers in detail in October 2018, she realized that they pertained instead to a federal lawsuit, and she contacted her attorney. *Id.* ¶ 32.

Defendants' attorney made his first appearance on November 26, 2018, nearly three months after the default judgment was entered. Notice of Appearance by Samuel Drukman, ECF No. 28. On the same day, defendants filed a motion to vacate the entry of the default and default judgment pursuant to Rules 55(c) and 60(b). Mot. to Vacate Default J., ECF No. 30. As noted, Judge Bulsara issued the R&R, recommending that the entry of default and default judgment be vacated and the case reopened for adjudication on the merits. R&R, ECF No. 43.

Gil timely filed objections challenging four aspects of Judge Bulsara's R&R. Pl.'s Objs., ECF No. 44. First, Gil objects to how Judge Bulsara applied the legal standard for vacating a default judgment to the facts of his case, arguing that a "more rigorous[]" analysis was required to

6

disturb a final judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)); *Pl.'s Objs.* 2–5. Second, Gil objects to the conclusion that defendants' failure to respond to the lawsuit following service of process did not constitute a willful default. Pl.'s Objs. at 5–9. Third, Gil objects that defendants offered insufficient evidence that they could present a meritorious defense at trial. *Id.* at 9–11. Fourth, Gil contends that he will be prejudiced by vacating the default judgment because he is dependent on the prompt payment of damages for his livelihood. *Id.* at 11–13. I address each of these objections in turn.

## STANDARD OF REVIEW

When reviewing a magistrate judge's report and recommendation, I "adopt those portions of the report to which no objections have been made and which are not facially erroneous." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002)); *see also* Fed. R. Civ. P. 72 advisory committee's notes to subdivision (b). However, if a party files timely objections, I must "conduct a *de novo* review of any contested sections of the report." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016), *vacated on other grounds*, 909 F.3d 519 (2d Cir. 2018); *see also* 28 U.S.C. § 636(b)(1). Ultimately, I must "arrive at [my] own, independent conclusion about those portions of the magistrate's report to which objection is made." *Silge v. Merz*, No. 05 CV 3648(GBD), 2006 WL 39632, at *1 (S.D.N.Y. Jan. 6, 2006) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985)), *aff'd*, 510 F.3d 157 (2d Cir. 2007).

## DISCUSSION

### A. Standard for Vacating a Default Judgment

Plaintiff does not object to Judge Bulsara's identification of the general legal standard by which a motion to vacate a default judgment must be evaluated. "The court may set aside an entry

of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) permits a district court to set aside a final judgment for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or other misconduct . . . ; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citing FRCP 60(b)). In the instant case, defendants moved to vacate the default judgement under Rules 60(b)(1), 60(b)(3), and 60(b)(6). *See* R&R 11. As Judge Bulsara based his findings on 60(b)(1), that provision will be the focus of my inquiry as well. *See* R&R 11, 27.

"Relief from a default judgment is entrusted to the sound discretion of the Court, and depends upon the circumstances of the case and the credibility and good faith of the parties." *Gumbs & Thomas Publishers, Inc. v. Lushena Books*, No. 99–CV–3608 (ILG), 2003 WL 21056983, at *2 (E.D.N.Y. 2003) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993)). In exercising that discretion, a court must consider three factors: "(1) the willfulness of default, (2) the existence of any meritorious defense, and (3) prejudice to the non-defaulting party." *Jaramillo v. Vega*, 675 F. App'x 76, 76 (2d Cir. 2017) (quoting *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)). These factors must be considered in the context of the Second Circuit's preference that cases be resolved on the merits, rather than by default judgment. *See Green*, 420 F.3d at 104; *Enron Oil*, 10 F.3d at 95–96.

The same factors govern a court's evaluation of a motion to vacate a default under Rule 55(c) and a motion for default judgment under Rule 60(b), although they must be applied more "rigorously" in the latter context. *Peterson v. Syracuse Police Dept.*, 467 F. App'x 31, 33 (2d Cir.

2012). *See* R&R 11–12; Pl.'s Objs. 4. Default judgments are subject to this heightened standard "because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil*, 10 F.3d at 96.

Plaintiff contests Judge Bulsara's interpretation of the stringency with which the three factors—willfulness, meritorious defense, and prejudice—must be applied to the facts, as well as his determination that all doubts as to whether a vacatur of a judgment should be granted must be resolved in favor of the defaulting party (here, defendants). Pl.'s Objs. 2–5. In so doing, plaintiff incorrectly asserts that the "rigorous" standard for evaluating a motion to vacate a default judgment is at odds with *Green*'s requirement that "all doubts must be resolved in favor of the party seeking relief from the judgment." *New York v. Green*, 420 F.3d at 104. *See* Pl.'s Objs. 4. In fact, in *Peterson*, the Second Circuit explicitly incorporated *Green*'s requirement into the "more rigorous[]" default judgment standard, writing: "The same factors . . . applied [in the context of a 55(c) motion are also applied] in the context of a Rule 60(b) motion to set aside a default judgment, although they are applied more rigorously, and the district court must resolve any doubts in the defaulting party's favor." 467 F. App'x at 31 (citing *Enron Oil Corp.*, 10 F.3d at 96 ("[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.")). In accordance with this clear direction from the Second Circuit, Judge Bulsara was bound to interpret doubts in favor of defendants. Thus, "the criteria for vacating a default judgment pursuant to Rule 60, including the meritorious defense factor, 'should be construed generously.'" *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356 (MKB)(JO), 2015 WL 13731354, at *2 (E.D.N.Y. July 2, 2015) (quoting *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

9

In short, Judge Bulsara correctly interpreted the legal standard for vacating default judgments under Rule 60(b). He also correctly applied the legal standard to the facts of this case, as discussed below (*see* Discussion, Sections (B)–(D)).

**B. Defendants' Willfulness**

Whether the defendants' default was "willful" is the most important factor a district court must consider on a motion to vacate a default judgment. *See De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) ("Of these factors, willfulness carries the most weight."). "[I]n general, courts should not set aside a default that is found to be willful." *Star Asia Int'l, Inc. v. Old Dominion Footwear, Inc.*, 18-CV-4741 (JMF), 2019 WL 2371632, at *1 (S.D.N.Y. June 5, 2019) (on appeal) (citing *SEC v. Risman*, 7 F. App'x 30, 31 (2d Cir. 2001)).

"Because the central purpose of a default judgment is to protect parties and the courts from harassment and purposeful delay, willfulness must involve more than carelessness or negligence by the defaulting party." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG) (RER), 2018 WL 6984837, at *2 (E.D.N.Y. Nov. 16, 2018) (citation omitted). Instead, willfulness requires the conduct to be "egregious and not satisfactorily explained." *Jaramillo*, 675 F. App'x at 76 (citing *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015)). "Thus, 'where a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the court, such neglect is inexcusable.'" *Arista Records, Inc. v. Musemeci*, No. 03-cv-4465(DGT)(RML), 2007 WL 3124545, at *4 (E.D.N.Y. Sept. 18, 2007) (quoting *Yan v. Bocar*, No. 04-cv-4194(LAK), 2005 WL 3005338, at *13 (S.D.N.Y. Sept. 8, 2005)), *report and recommendation adopted*, 2007 WL 3145861 (Oct. 25, 2007); *see Frost Belt Int'l Recording*

*Enters., Inc. v. Cold Chillin' Records*, 758 F. Supp. 131, 136 (S.D.N.Y. 1990) ("[U]tter failure to explain the default effectively precludes a finding of excusable neglect.").

However, "Rule 60(b) expressly contemplates that some types of 'neglect' are 'excusable.' The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). The Second Circuit has outlined several scenarios in which a defendant's conduct does not rise to the level of willfulness. Among them, a default is not considered willful when a defendant confuses two concurrent legal proceedings pertaining to similar subject matter in which he is simultaneously involved. *See, e.g., Durso v. Barsyl Supermarkets Inc.*, 11-CV-5544 (NG) (RML), 2016 WL 3546330, at *2 (E.D.N.Y. June 23, 2016); *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12 Civ. 0052(JPO), 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013); *Moore v. Caledonia Cent. Supervisory Union,* No. 1:11–cv–276–jgm, 2012 WL 4815529, at *1–2 (D. Vt. Oct. 10, 2012); *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983); *McVicker v. Donnelly*, 95 F.R.D. 353, 354–55 (E.D. Pa. 1982). Underlying this line of cases is the general principle that "confusion resulting from the time proximity and subject matter similarity of . . . two proceedings clearly demonstrate[s] that [a] defendant's failure to respond constitutes 'excusable neglect.'" *McVicker*, 95 F.R.D. at 355; *see also Davis*, 713 F.2d at 915.

Plaintiff raises two challenges to the reasoning supporting Judge Bulsara's conclusion that the defendants' default was not willful. *See* R&R 19–20. First, plaintiff objects that Judge Bulsara incorrectly interpreted this case law, and specifically *Davis v. Mustler*, to support his determination that defendants' confusion between the NYSDOL proceeding and this federal lawsuit constitutes "excusable neglect." Pl.'s Objs. 6. Second, plaintiff contends that the record in this case does not plausibly support Judge Bulsara's conclusion that defendants' confusion between this lawsuit and

11

the NYSDOL proceeding rendered their default not willful. *See* R&R 20; Pl.'s Objs. 6. Neither contention is persuasive.

Judge Bulsara's analogy of this case to *Davis v. Mustler*, in which the Second Circuit reversed the district court's denial of a motion to vacate the default judgment when defendant's confusion between two ongoing federal lawsuits resulted in his failure to appear in the second suit, was entirely appropriate. *See* 713 F.2d at 915–16; R&R 17–18. As in *Davis*, the commencement of this federal lawsuit overlapped in time and pertained to the same subject matter as Gil and Frantzis's related NYSDOL matter. 713 F.2d at 915. Additionally, the same parties and claims were involved in both matters—Gil's NYSDOL complaint sought to recover unpaid wages from his employment with Frantzis. Mem. In Supp. of Def. J. 4, ECF No 16-4. Indeed, when Gil filed the federal lawsuit in this case, Frantzis still owed Gil outstanding payments on the NYSDOL settlement, *see* Gil Aff. I ¶ 15; Mem. in Supp. of Default J. 5, and Gil explicitly incorporated his claims in the NYSDOL proceeding into his federal complaint, Compl. ¶ 21.

The plaintiff attempts to distinguish *Davis* from this case on the ground that *Davis* involved two ongoing cases in *the same court*, whereas the defendants here claim confusion between an agency proceeding and a federal lawsuit. Pl.'s Objs. 6. But the distinction is immaterial. In *Murray Engineering*, the court found no willful default when the defendant confused two cases, one of which was in state court and the other in federal court. *Murray Engineering*, 2013 WL 1809637, at *4–5. The court recognized no requirement that the matters at issue proceed in the same forum for a lay defendant to plausibly confuse them. Although, as plaintiff alleges, the methods of service and format of the documents in an agency proceeding are distinct from those in a federal lawsuit, it is reasonable to conclude that those distinctions would be lost upon a lay defendant with no legal training. *See* Pl.'s Objs. 8; Niki Frantzis Decl. ¶ 7.

Nor does the holding in *Durso* compel this court to find willful a default resulting from defendants confusing an agency proceeding with a federal lawsuit. Pl.'s Objs. 7–8. In *Durso*, although the court found a defendant's default to be willful when he claimed to confuse an NLRB Action with a related federal litigation, the court's determination was grounded in the fact that the agency proceeding had not even been initiated until approximately one month after plaintiffs filed an amended complaint in the suit. *Durso*, 2016 WL 3546330, at *1–2 ("Even if I assume that a lay reader might confuse the Complaint in this matter with a filing in the NLRB matter . . . the Complaint in this case was filed before the NLRB Action began.").

Turning to the plaintiff's second objection to Judge Bulsara's reasoning regarding defendants' willfulness, facts on the record here provide a basis to conclude that defendants confused the two proceedings in good faith, especially when doubts are construed in favor of the defaulting party, as the circuit instructs. Both Niki Frantzis and her son, John Frantzis, maintain that they genuinely believed that any documents they received regarding Gil's wage and hour claims pertained to the NYSDOL matter. Niki Frantzis Decl. ¶ 34; John Frantzis Decl. ¶ 12, ECF No. 40. Gil hand-delivered a copy of the default judgment to Frantzis in late September, 2018, but Frantzis assumed that it pertained to the ongoing agency proceeding. Niki Frantzis Decl. ¶¶ 8–11. Although John Frantzis acknowledges that he contacted Gil's lawyer about a legal document he received prior to the default judgment, he contends that the lawyer did not advise him that this proceeding was distinct from the NYSDOL matter. John Frantzis Decl. ¶ 15.[1] Additionally, neither Frantzis nor her son has a legal education or background, and Niki Frantzis's English skills are limited, as it is her second language. Niki Frantzis Decl. ¶¶ 6–7; John Frantzis Decl. ¶¶ 6–7.

---

[1] *But see* Lamadrid Aff. ¶ 11, ECF No. 37 (contending that Mr. Lamadrid informed John Frantzis of the federal lawsuit and explained that it was distinct from the NYSDOL proceeding).

Although these facts support the conclusion that Frantzis was negligent in her handling of this case, a demonstration of willfulness requires a stronger showing than mere negligence. *See Nikolaeva*, 2018 WL 6984837, at *2. Construing all doubts in defendants' favor, Frantzis's assertion that she mistakenly confused this proceeding with the NYSDOL matter is plausible, and thus her default was not willful.

**C. Defendants' Meritorious Defense**

"In order to succeed on a motion to set aside a default, the defaulting party must present a meritorious defense." *Nikolaeva*, 2018 WL 6984837 at *3 (citing *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, No. 11-CV-115 (RJD) (VMS), 2016 WL 7322333, at *4 (E.D.N.Y. Dec. 15, 2016), *aff'd*, 707 F. App'x 59 (2d Cir. 2017)). "The existence of a meritorious defense is a key factor in the Rule 60(b) analysis. As a consequence, [the circuit has] held that 'the absence of such a defense is sufficient to support [a] district court's denial' of a Rule 60(b) motion." *New York v. Green*, 420 F.3d at 109 (quoting *State St. Bank & Tr.*, 374 F.3d at 174).

In light of the Second Circuit's strong preference that cases be resolved on their merits, *Enron Oil*, 10 F.3d at 95–96, the circuit generously construes the meritorious defense standard, *State St. Bank & Tr.*, 374 F.3d at 168. Although "[a] defendant must go further than alleging that a defense exists[,]" *Dudley v. Pendagrass*, No. 06 CV 216, 2008 WL 4790501, at * 4 (E.D.N.Y. Oct. 31, 2008), he "need not establish his defense conclusively[.] . . . [But] he must present evidence of facts that, 'if proven at trial, would constitute a complete defense,'" *McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quoting *Enron Oil*, 10 F.3d at 98) (citation omitted). The defendant must also "'articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations.'" *Lopez v. Traffic Bar and Rest. Inc.*, No. 12 Civ. 8111(JCF), 2015 WL 545190,

at *4 (S.D.N.Y. Feb. 9, 2015) (quoting *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674(RJS), 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013)). Where a plaintiff's claims are based on unpaid wages, "a defense that the parties were properly paid constitutes a 'meritorious defense.'" *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 81 (E.D.N.Y. Dec. 16, 2010) (vacating an entry of default, in part because defendants produced evidence that employees were properly paid, constituting a meritorious defense.).

"A defense is meritorious if it is good at law so as to give the fact finder some determination to make." *Micolo v. Brennan*, No. 07–CV–4901 (JS)(AKT), 2009 WL 742729, at *10 (E.D.N.Y. Mar. 18, 2009) (quoting *Gates v. Wilkinson*, No. 1:03-CV-763, 2005 WL 3115826, at *2; *see also Am. All.*, 92 F.3d at 61. "'[A] default must be vacated where further factfinding [is] necessary to ensure that substantial justice [is] served.'" *Prestige Capital Corp. v. Fuber LLC*, 16 Civ. 9577 (DAB), 2017 WL 2558803, at *3 (S.D.N.Y. June 5, 2017) (quoting *Bangkok Bank Ltd. v. Wallant Int'l Trade, Inc*., No. 88 CIV. 2675 (JFK), 1989 WL 156299, at *2 (S.D.N.Y. Dec. 18, 1989)).

Courts in this circuit have interpreted this standard broadly. For example, in *Gonzalez*, the court determined that two of the defendants' alleged defenses—that the plaintiff miscalculated his hours and that FLSA's good faith exception applied to the defendant's conduct—were meritorious. *Gonzalez v. ERBA Inc.*, 15-cv-6037 (ADS) (AYS), 2018 WL 1221152, at *3 (E.D.N.Y. Mar. 8, 2018). Specifically, "[d]efendants . . . made an adequate showing that the Court would have some determination to make[, weighing] in favor of vacating the default judgment[,]" *Gonzalez v. ERBA Inc.*, 2018 WL 1221152, at *3, because the court could deny liquidated damages based on a showing of defendant's good faith. Similarly, in *Prestige Capital Corp.*, the court determined that the defendant asserted a meritorious defense by alleging that he paid $50,000 against a $300,000 loan, disputing only the amount remaining on the debt, but not the "existence or amount of the

original debt." 2017 WL 2558803, at *3–4 (holding that the entry of default against defendant should be set aside).

As in *Gonzalez*, Gil and Frantzis dispute the number of hours Gil worked as superintendent at the building and on his landscaping and repair tasks at Frantzis's home—a significant component of his wage and hour claims. Frantzis's allegations are detailed; she contends that Gil worked approximately 10 fewer hours per week than he alleges, and that he spent only one day performing landscaping work at her home.

In like vein, Frantzis directly challenges the basis of Gil's wage and hour claims, asserting that Gil was fully paid for all of his work at the building and Frantzis's home. For example, she states that "he was paid [$150 to $250 in] cash for *all* repair and maintenance work at the [b]uilding, which he performed on an as needed basis." Niki Frantzis Decl. ¶¶ 19, 22. For jobs requiring more than an eight-hour workday to complete, she paid him $175 in cash on average. *Id.* ¶ 19. Frantzis also alleges that she paid Gil $250 for the only day that he worked at her personal residence. *Id.* ¶ 23. Finally, she asserts that in exchange for Gil acting as superintendent of the building, she and Gil had a "handshake agreement" that Gil was to be compensated by being permitted to live rent-free in an apartment which she claims has a market value of $1,800 per month. *Id.* ¶ 17, 22. The precise parameters of the alleged agreement are disputed by Gil, who contends that he never entered into such an agreement with Frantzis. Gil Aff. III ¶ 7. Contrary to plaintiff's position, however, Frantzis need not now establish the value of the apartment allowance she claims as an offset against Gil's wages. Pl.'s Objs. 11. Additionally, although plaintiff contends that Frantzis's statements are contradicted by other evidence in the record,[2] *see* Pl.'s Objs. 10–11,

---

[2] Plaintiff urges that defendants cannot present a meritorious defense because in their stipulation of settlement with the NYSDOL, they agreed to compensate plaintiff for wages owed under NYLL, and in Frantzis's Petition for Review, she acknowledged that she and Gil had agreed that

16

her statements are sufficient to show that her version of events is plausible. Plaintiff's arguments address her credibility, but do not undermine the sufficiency of her meritorious defense, and thus "give the fact finder some determination to make." *Micolo*, 2009 WL 742729, at *10. Analogizing to *Gonzalez* and *Prestige Capital*, at the default judgment stage, these facts are sufficient to establish a meritorious defense.

Finally, Frantzis contends that she never required Gil to purchase any tools or equipment for purposes of his employment by her. Rather, Gil was a professional handyman who acquired his tools and equipment to use on a variety of projects unrelated to Frantzis and the building. Niki Frantzis Decl. ¶ 21.

In short, under the governing legal standard, which instructs me to interpret all doubts in favor of the defendant, Frantzis has made an adequate showing of a meritorious defense. Frantzis alleges that Gil worked substantially fewer hours than he attested and was fully paid for the work he performed at the building and her home. She offered specific details supporting her more general allegations. Having raised "a serious question as to the validity of [plaintiff's] allegations," defendants have met their burden of raising a meritorious defense required for vacatur of a default judgment. *Lopez*, 2015 WL 545190, at *4.

---

he would serve as superintendent in exchange for a rent-free apartment. Pl.'s Objs. 10-11; Stip. Of Settlement, ECF No. 30-9; ECF No. 44-4; Petition for Review, ECF No. 44-3. The argument is not persuasive. Entering into a settlement agreement that explicitly disclaims defendants' liability, Stip. of Settlement ¶ 8, cannot establish in this lawsuit either defendants' liability or the appropriate amount of damages. *See* Fed. R. Evid. 408 (completed settlements and settlement negotiations are inadmissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction"; they may be admitted only if offered for "another purpose," such as to prove bias or obstruction of an investigation.). Additionally, Frantzis's statement regarding her rent arrangement with Gil could be interpreted as consistent with her declaration here that she paid him cash to complete repairs at the building.

17

**D. Prejudice to Plaintiff**

"Delay alone does not establish prejudice." *Arista Records*, 2007 WL 3124545, at *4 (citing *Enron Oil*, 10 F.3d at 98). Rather, "plaintiffs must demonstrate 'that the delay will result in the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion.'" *Arista Records*, 2007 WL 3124545, at *4 (quoting *Davis v. Musler*, 713 F.2d at 916. "Although vacatur 'may delay plaintiffs' recovery, delayed recovery does not establish prejudice in the absence of a showing that the delay has resulted in the loss of evidence or will create difficulties in discovery.'" *U.S. Commodity Futures Trading Com'n v. McCrudden*, No. CV 10–5567(DRH)(AKT), 2015 WL 5944229, at *29 (E.D.N.Y. Oct. 13, 2015) (quoting *LaBarbera v. MMK Trucking, Inc.*, No. CV-06-6643 (CPS)(KAM), 2008 WL 508630, at *2 (E.D.N.Y. Feb. 25, 2008).

Additionally, "[p]rejudice may be shown . . ." by a plaintiff's "substantial reliance upon the judgment." *Gonzalez*, 2018 WL 1221152, at *4 (quoting *Farrell v. Cty. Van & Storage, Inc.*, No. 96-CV-1174, 1996 WL 705276, at *3 (E.D.N.Y. Nov. 25, 1996)). For example, one court determined that a plaintiff had substantially relied on a judgment when it had expended time and resources in efforts to enforce the judgment. *See Super Laundry Equipment Corp. v. Chan*, Civ. A. No. 13–7381(NLH)(AMD), 2015 WL 3953887, at *3 (D.N.J. June 29, 2015).

Plaintiff's current objection to Judge Bulsara's findings regarding this issue raises a novel argument not presented for the magistrate's consideration, namely that plaintiff is uniquely reliant upon immediately recovering the judgment because it will compensate him for past unpaid wages. *See* Pl.'s Objs. 12–13; Mem. Of Law in Opp. To Def.'s Mot. To Vacate 14, ECF No. 38. "'[E]ven in a de novo review of a party's specific objections, [however,] the court ordinarily will not consider arguments, case law and/or evidentiary material which could have been but [were] not,

presented to the magistrate judge in the first instance.'" *Mallek v. Allstate Indem. Co.*, 17-CV-5949(KAM), 2018 WL 3629596, at *1 (E.D.N.Y. July 31, 2018) (quoting *U.S. Flour Corp. v. Certified Bakery. Inc.*, No. 10–CV–2522 (JS)(WDW), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012)). Because Gil raised no objection to any of Judge Bulsara's other findings supporting his conclusion that Gil would suffer no cognizable prejudice were the default judgment vacated, there is no valid objection for the court to consider. *See Mallek*, 2018 WL 3629596, at *1.

Regardless, plaintiff has not proffered evidence demonstrating substantial reliance on the default judgment, beyond highlighting that this judgment is based in claims for unpaid wages. *See* Pl.'s Objs. 12. Nor has plaintiff identified any precedent indicating that a party's interest in receiving a judgment quickly can substantiate an assertion of prejudice. *Id.* at 12–13. I do not doubt the importance of plaintiff's wages to his livelihood and acknowledge the FLSA's critical goal of "insuring . . . [that] our able-bodied working men and women [receive] a fair day's pay for a fair day's work." *Cheeks v. Freeport House of Pancakes Inc.*, 796 F.3d 199, 206 (2d Cir. 2005) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). Nevertheless, the Supreme Court's instruction that the FLSA be "interpreted . . . liberally" cannot absolve me of my obligation to resolve this dispute on the merits, particularly in light of defendants' potentially meritorious defense. *Id.* at 206 (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008).

## CONCLUSION

For the reasons discussed above, I adopt Judge Bulsara's report and recommendation in its entirety. Defendants' motion is therefore granted, entry of default and default judgment vacated, and the case reopened. Defendants may answer the complaint.

So ordered.

                                                          _____/s/_____
                                                          Allyne R. Ross
                                                          United States District Judge

Dated:        September 30, 2019
                Brooklyn, New York